MISSOURI HIGHWAY & TRANS-
PORTATION COMMISSION,
Respondent,

v.

ROCKHILL DEVELOPMENT
CORPORATION,
Appellant.

No. WD 46638.

Missouri Court of Appeals,
Western District.

Sept. 28, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 2, 1993.

Application to Transfer Denied Dec. 21, 1993.

Kenneth C. Hensley, Hensley & Hensley, Raymore, for appellant.

Peter M. Donovan, Sr. Asst. Counsel, Kansas City, for respondent.

Before BERREY, P.J., and
BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Rockhill Development Corporation (Rockhill) appeals from the trial court's $40,000 judgment in its favor, for damages in condemnation, against the Missouri Highway and Transportation Commission (MHTC). Rockhill asserts three points on appeal arguing that the trial court erred in: 1) instructing the jury not to consider evidence of the alleged increase in surface water drainage in its assessment of Rockhill's condemnation damages; 2) overruling Rockhill's objection to MHTC's admission of exhibit 16 which was a photograph taken after the date of the condemnation; and 3) refusing to permit Rockhill to call a rebuttal witness.

MHTC filed its petition commencing this condemnation action against Rockhill on April 16, 1990. MHTC sought to condemn a portion of Rockhill's property as part of a project to rebuild the Truman Road interchange with Missouri Highway 291 near Independence, Missouri. Rockhill's property consisted of 11.23 acres prior to condemnation and 10.37 acres after condemnation. Of the property taken, 0.86 acre was allocated for new right of way, 0.06 acre was allotted for a temporary easement to build an entrance and 0.50 acre was needed for a permanent easement made up of 0.26 acre for a waterline relocation and 0.24 acre for two drainage easements for pipes and outlets. The property was zoned M-1 which is the designation utilized by the City of Independence for industrial zoning. The date of the taking was August 21, 1990.

On August 6, 1990, the report of the court-appointed commissioners was filed awarding Rockhill $68,000 in condemnation damages. Both MHTC and Rockhill filed exceptions to the commissioners' award of damages on August 10, 1990, and Rockhill requested a jury trial. Prior to trial, MHTC filed a motion in limine, which was denied, seeking to exclude evidence of damage to the Rockhill property as a result of increased water runoff. A jury trial was held from June 8, 1992 to June 10, 1992.

On June 10, 1992, the jury awarded damages of $40,000 to Rockhill. Rockhill's motion for new trial was denied by the trial court on July 15, 1992. Rockhill filed this timely appeal thereafter.

In Point I, Rockhill claims the trial court erred in giving Instruction No. 8 which withdrew evidence of increased surface water drainage from the jury's consideration in its assessment of condemnation damages. Rockhill argues that there was substantial evidence of surface water drainage and runoff to require submission of the issue on damages.

A withdrawal instruction may be given when evidence on an issue has been received, but there is inadequate proof given for final submission of the issue to the jury. MAI 34.01. The purpose of a withdrawal instruction is to avoid misleading the jury on a spurious issue. *Bradley v. Browning–Ferris Industries*, 779 S.W.2d 760, 765 (Mo.App. 1989). The giving of a withdrawal instruction is within the discretion of the trial court. *Anglim v. Missouri Pacific R. Co.*, 832 S.W.2d 298, 308 (Mo. banc 1992); *Bradley*, 779 S.W.2d at 765. Review on appeal considers whether a reversal is required due to an abuse of the trial court's discretion. *See Weisbach v. Vargas*, 656 S.W.2d 797, 800 (Mo.App.1983).

During the course of the trial, Rockhill examined two witnesses about surface water drainage. Over the objections of MHTC, the trial court allowed Rockhill to proceed on this issue. At the conclusion of the trial, however, the court gave Instruction No. 8, pursuant to MAI 34.01 and patterned after MAI 34.02. Instruction No. 8 withdrew from the jury the issue of damages resulting from surface water runoff. Rockhill objected to the giving of the withdrawal instruction on the basis that there was substantial evidence

in the case to support a factual finding by the jury that there had been some surface water damage.

■ "Substantial evidence is that which, if true, has probative force upon the issues and from which the trier of facts can reasonably decide a case." *Sheridan v. Sunset Pools of St. Louis,* 750 S.W.2d 639, 641 (Mo.App. 1988). In determining whether substantial evidence existed, the evidence must be viewed in the light most favorable to the proponent of the evidence. *See Smith v. Mo. Highway & Transp. Com'n,* 826 S.W.2d 41, 44 (Mo.App.1992).

■ Although the trial court ruled on submissibility under the common enemy doctrine, a recent holding of the Missouri Supreme Court now governs the proof needed to make a submissible case on damage resulting from surface water runoff. In *Heins Implement Co. v. State Highway Commission,* 859 S.W.2d 681, 683 (Mo. banc 1993), the Court abrogated the common enemy doctrine in situations involving surface water runoff and adopted a doctrine of reasonable use in its stead.[1] Although the facts of *Heins* deal with inverse condemnation, the analysis of the Court pertained to whether a "taking" had occurred and, therefore, is applicable to a condemnation proceeding as well.

■ The Court in *Heins* held that a taking occurs "when, as a result of a public works project, private property is damaged by an unreasonable diversion of surface wa-

ters, whether by design or mistake...."[2] *Id.* at 691. The reasonable use rule provides that "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Id.* at 689 (quoting *Armstrong v. Francis Corp.,* 20 N.J. 320, 120 A.2d 4, 8 (1956)). A defendant may be found liable if the defendant's conduct is either (1) intentional and unreasonable; or (2) negligent, reckless, or in the course of an abnormally dangerous activity. *Heins,* 859 S.W.2d at 689. It is a question of fact in each case whether the gravity of the harm to the plaintiff outweighs the utility of the defendant's conduct. *Id.* The reasonable use concept already governs the rights of users of certain waters in Missouri and, by applying the reasonable use rule to surface water runoff, all waters over which controversy may arise as to use are governed by the same standard. *Id.* at 689.

A determination of whether there was sufficient evidence of Rockhill's alleged damage from surface water runoff to compel submission of the issue to the jury must begin with a review of the evidence. Clarence Stowell, one of the incorporators of Rockhill, testified that MHTC installed a thirty-inch drainage pipe upon one portion of the property taken for a permanent drainage easement. As a result, surface runoff draining onto the Rockhill property from higher ground to the north

---

1. An overruling decision regarding substantive law should generally be applied retroactively. *Sumners v. Sumners,* 701 S.W.2d 720, 723 (Mo. banc 1985). In the instant case, there is an issue as to whether *Heins,* which overrules a principle of substantive law, is properly applied retroactively. In *Sumners,* the Missouri Supreme Court set forth the following three-part test for deciding whether an overruling decision of the Court should be applied retroactively: 1) the decision must establish a new principle of law by overruling past precedent; 2) the court must determine whether retroactive application will enhance or retard the purpose and effect of the new rule; and 3) the court must balance the interests of those affected by the change, examine the degree to which the parties have relied on the old rule and weigh the hardship that may result from retroactive application against the hardship to parties who would be denied the benefit of the

new rule if it is not applied retroactively. *Id.* at 724. In the instant case, substantive law is involved and the *Sumners* test is clearly resolved in favor of retroactive application. *Heins* clearly overrules past precedent. Retroactive application will enhance the purpose and effect of the new rule since the Missouri Supreme Court, in adopting the new rule, sought to update Missouri law and make Missouri surface water law uniform. In weighing the interests of the parties, neither party relied heavily on the old law and retroactive application of the new rule would not cause either party undue hardship.

2. The Court noted that other cases have suggested that even a reasonable diversion of surface water was a "taking" by a public entity, but it did not reach that issue. *Heins,* 859 S.W.2d at 689 n. 15.

flows under Truman Road, through the culvert into an open drainage ditch and then into Spring Branch, a creek running through the property. MHTC also installed an eighteen-inch culvert on the other area it took for drainage easement. Stowell testified that, where this smaller culvert empties, there is standing water on a portion of Rockhill's remaining property caused by the overflowing of the "sump." Stowell described the "sump" as holes, dug approximately twelve inches deep and filled with rocks, into which runoff water drains and is then allowed to evaporate. Several photographs were admitted into evidence which Stowell identified as accurate representation of the property constituting the drainage easements and the "sump."

During cross-examination by Rockhill, MHTC witness Fred Steele, the registered engineer who designed the highway project for MHTC, testified that water drains to the south under Truman Road and onto the Rockhill property but would not have naturally flowed to that area before the taking. On redirect by MHTC, Steele testified that, prior to the highway project, watershed from 6.11 acres drained onto the Rockhill property and, after the project was completed, only watershed from 4.98 acres drained onto the property. Steele also stated that the surface water drainage would not exceed the natural capacity of the drainway.

■■■ This evidence is insufficient to submit the issue of damages from surface water drainage to the jury. MHTC's witness Steele presented the only evidence addressing a diversion of surface water. Although he testified that some water had been diverted onto the property, he further testified that other water had been diverted away from the property so that the overall drainage onto the Rockhill property was from fewer acres than before the taking. The only evidence before the court disclosed that the highway project did not divert more surface water onto the property, but rather, less water than prior to the condemnation. The evidence does not suggest any basis upon which the diversion of the surface water or the alteration of the flow of surface water could be actionable under the reasonable use of *Heins.* Although there was evidence of diversion of surface water and of damages caused by surface water drainage there was no evidence establishing that MHTC's activities had caused the damages. Rockhill had the burden of establishing a causal connection between the taking and any damage to the remaining property. *State ex rel. State Hwy. Com'n v. Long,* 422 S.W.2d 276, 278 (Mo. banc 1968). The trial court's giving of a withdrawal instruction was not an abuse of its discretion. Point I is denied.

In Point II, Rockhill asserts that the trial court erred in overruling its objections to MHTC's exhibit 16, which was a photograph taken after the August 21, 1990 date of condemnation. Rockhill argues that exhibit 16 was irrelevant and that a proper foundation was not laid for its admission. Rockhill also argues that, since the photograph was taken on September 11, 1990, twenty days after the date of the taking, any possible probative value it had was far outweighed by its prejudicial effect.

The photograph at issue had been taken at a time when the weeds on the property were not cut. Rockhill argues that the photograph was prejudicial because it depicted the property in a "bad light." Steele testified that the photograph accurately depicted the property as it existed before the taking. Steele admitted during a voir dire examination by counsel for Rockhill that he did not take the photograph and did not know when it had been taken. Rockhill objected on the basis that MHTC had not laid proper foundation for the photograph. Rockhill contends that because Steele did not recall being at the property on August 21, 1990, the date of the taking, he could not testify as to whether the photograph was a fair and accurate representation of what the property looked like on that date.

■■■ In a condemnation case, the admission or exclusion of evidence is within the sound discretion of the trial judge. *St. ex rel Mo. Hwy. and Transp. v. McNary,* 664 S.W.2d 589, 594 (Mo.App.1984). Reversal will not be granted on the basis of errors in the admission or exclusion of evidence unless there is a substantial and glaring injustice. *Id.* In deciding upon the admissibility of

evidence in a condemnation case, the trial judge should consider whether the evidence assists the jury in determining the issues of value and damages. *Id.*

The party offering a photograph into evidence must prove that it is an accurate representation of the subject matter it portrays. *Wood River Pipeline Co. v. Sommer,* 757 S.W.2d 265, 269 (Mo.App.1988). Such may be proved by the testimony of any witness who is familiar with the subject matter of the photograph and competent to testify as to his or her personal observation. *Id.* The admission of a photograph lies within the sound discretion of the trial judge and will not be disturbed on appeal unless an abuse of discretion is shown. *Highway and Transp. Com'n v. Vitt,* 785 S.W.2d 708, 712 (Mo.App. 1990). A photograph will not be rendered inadmissible by the fact that it was taken before or after an event and before or after changes occurred as long as the extent of the changes is explained. *Id.*

In the instant case, Steele's testimony provided a sufficient foundation for the admission of the photograph. Steele was familiar with the Rockhill property and testified from his personal observation of the property that the photograph was an accurate depiction. Steele testified, in response to voir dire questions asked by Rockhill's counsel, that he had observed the property both when the weeds had been cut and when they had not been cut. He was, therefore, competent to testify from his own personal observations as to whether the photograph accurately depicted the property even though the weeds had not been cut in the photograph. Steele's testimony in regard to the weeds also adequately explained any differences in the height of the weeds before the August 21, 1990 taking and the time the photograph was allegedly taken on September 11, 1990.

Rockhill has not demonstrated that the admission of the photograph was an abuse of the trial court's discretion or that such admission constituted a substantial and glaring injustice. MHTC laid sufficient foundation for the admission of the photograph and it was relevant to the issue of damages

in that it assisted the jury in understanding the condition of the property prior to the taking. Point II is denied.

Rockhill argues in Point III that the trial court abused its discretion in refusing to permit Rockhill to call Clarence Stowell as a rebuttal witness. Rockhill asserts that such evidence would have rebutted the testimony of MHTC witness James Fern that property owners adjacent to the Rockhill property might be interested in purchasing a portion of the Rockhill property.

At the close of MHTC's evidence on June 9, 1992, the trial court asked Rockhill's counsel if he intended to present rebuttal evidence to which Rockhill's counsel responded "I don't believe so." After deciding to hold closing arguments the following morning, the trial court excused the jury for the evening. The trial resumed on the morning of June 10, 1992 at which time Rockhill's counsel requested leave to reopen the case and present the rebuttal testimony of Clarence Stowell. MHTC's counsel objected on the basis that both parties had rested the previous day. The trial court denied Rockhill's motion to reopen the case.

Whether to allow a property owner to reopen the case for the admission of additional evidence is within the sound discretion of the trial court. *State ex rel. State Hwy. Com'n v. Merkel,* 684 S.W.2d 440 (Mo. App.1985). The trial court's decision as to whether to allow a party to present additional evidence after the evidence is closed will only be reversed upon a showing that the court abused its discretion. *Carrel v. Carrel,* 791 S.W.2d 831, 835 (Mo.App.1990). It would be an abuse of discretion to refuse to permit the introduction of material evidence which might substantially affect the merits of the case, if such presentation would not inconvenience the court or unfairly advantage one of the parties. *Matter of Estate of Viviano,* 624 S.W.2d 130, 133 (Mo.App.1981).

In the instant case, Rockhill has not proved that the trial court abused its discretion. Rockhill argues only that the excluded testimony it sought to admit would have rebutted the testimony of Fern as to the interest of property owners adjacent to the Rock-

hill property in purchasing a portion of the Rockhill property. Fern conceded several times during cross-examination that he had no personal knowledge as to whether the adjoining landowners would be interested in a portion of the remaining Rockhill property. Rockhill has not demonstrated that the evidence it sought to introduce was material evidence which could have substantially affected the merits of this case. Point III is denied.

The judgment is affirmed.

All concur.