**John KUEFFER and Mary Kueffer, Plaintiffs/Appellants,**

v.

**Michael BROWN and Glenna Brown, Defendants/Respondents.**

No. 63809.

Missouri Court of Appeals, Eastern District, Division Two.

May 24, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1994.

Application to Transfer Denied Aug. 15, 1994.

---

Gregory F. Quinn, Quinn, Ground & Banton, Manchester, for appellants.

Ervin D. Lofftus, Lofftus & Dawdy, Fenton, for respondents.

CRANE, Presiding Judge.

This is a surface water case. Plaintiffs John and Mary Kueffer and defendants Michael and Glenna Brown own adjoining three acre residential lots in Jefferson County, Missouri. Plaintiffs are the upper landowners. After plaintiffs filed a trespass action against defendants, defendants counterclaimed, alleging plaintiffs damaged their property by discharging surface water thereon. Following a bench trial, the trial court entered judgment for plaintiffs on their petition and judgment for defendants on their counterclaim and awarded both parties damages. Plaintiffs appeal the $12,000 judgment in favor of defendants on their counterclaim. Defendants have not appealed the judgment in favor of plaintiffs on the petition. We reduce the judgment in favor of defendants to $10,000 and affirm as so modified.

In a court-tried case we sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept all evidence and inferences favorable to the judgment and disregard all contrary inferences. *Behen v. Elliott*, 791 S.W.2d 475, 476 (Mo.App.1990).

### FACTUAL BACKGROUND

Viewed in the light most favorable to the judgment being appealed, the evidence at trial established the following facts. Plaintiffs and defendants purchased their lots from the subdivision developer and built their homes at approximately the same time in 1979–1980. Prior to any development, runoff from the surrounding hillside periodically flowed onto plaintiffs' property into a natural drainage ditch, also referred to as a dry creek bed, running along the south side of plaintiffs' property. The water then flowed into a natural ditch thirty feet wide and six to eight feet deep along the front (east side) of plaintiffs' property. This ditch discharged into a ditch across the front of defendants' property. During heavy rainfall the water also flowed from plaintiffs' south ditch into another natural ditch located at the back (west side) of plaintiffs' property, about 75 feet away from plaintiffs' house. The water from plaintiffs' ditch flowed into a natural swale approximately three feet deep and four feet wide at the rear of defendants'

property. The swale becomes shallower as it crosses defendants' property and comes within 15 feet of defendants' house.

After purchasing the property, plaintiffs decided to fill in their front ditch. In 1983, plaintiffs laid a 210 foot metal culvert, 42 inches in diameter, in the ditch and connected it to a 48 inch metal culvert which the developer had placed under their driveway. They backfilled over the new culvert with 300 truckloads of dirt, filling the entire depth of the original creek bed. Plaintiffs also installed a retaining tie wall on their property, about ten feet from defendants' property line across the front creek bed. The metal culvert protruded through this wall about six inches. After some erosion occurred, plaintiffs built a spillway out of concrete blocks at the end of the pipe. In 1986, plaintiffs built a second and third tie wall which ran from the street to the back of their property, close to defendants' property line.

In May, 1987 plaintiffs filed a petition in trespass against defendants for damages. Defendants counterclaimed, alleging that plaintiffs' construction work "caused the diversion of water, soil, and other materials unlawfully onto the property of the Defendants and caused erosion of their property and other damage to vegetation and structures...."

In 1990, plaintiffs' property flooded twice. In response to that flooding, plaintiffs dug out and raised the north bank of the ditch which ran along the south side of their property. This caused water which would ordinarily flow through plaintiffs' front ditch to back up and be diverted to the ditch along the back of plaintiffs' property. After taking these measures, plaintiffs did not experience further flooding to their property. However, after this change was made, defendants' backyard flooded for the first time in 1991, damaging their home. At trial defendants sought damages for the 1991 flooding, and abandoned their claim for damages to the front of their property.

## ISSUES

Plaintiffs raise four points on appeal. Two of these points involve surface water law. Plaintiffs contend that the trial court erred by treating the case as a natural watercourse case rather than a surface water case or, alternatively, in misapplying the law relating to surface water. In the remaining two points, plaintiffs challenge the fact and amount of damage.

Neither party requested findings of fact or conclusions of law and none were made. In this situation, we presume all findings of fact were found in accord with the judgment and we uphold the judgment under any reasonable theory presented and supported by the evidence. *J. and J. Home Builders, Inc. v. Dobas*, 839 S.W.2d 737, 738 (Mo.App.1992). *See* Rule 73.01(a)(2) (repealed June 1, 1993, new rule 73.01(a)(3)).

### I. Surface Water Issues

#### A. Applicable Law

At the time this case was tried, Missouri followed the "modified common enemy doctrine" with respect to surface water. *See Heins Implement v. Hwy. & Transp. Com'n.*, 859 S.W.2d 681, 686 (Mo. banc 1993). As the doctrine stood at the time of trial, an upper landowner was protected from liability to a lower landowner for obstructing the flow of surface water, provided that:

> (1) the discharge flows into a "natural drainway channel" located on his property "where the surface water from the drained areas would naturally go ... even though in doing so they [the upper landowner] might increase and accelerate the flow of surface water in its natural channel onto the lands of the plaintiff," *id.* [Haferkamp v. City of Rockhill, 316 S.W.2d 620] at 627, [ (Mo.1958),] and (2) the upper owner "acts without negligence and does not exceed the natural capacity of the natural drainway to the damage of the neighbor." (citations omitted).

*Hansen v. Gary Naugle Const. Co.*, 801 S.W.2d 71, 74 (Mo. banc 1990).[1] However, different rules had evolved with respect to

---

1. This was the most recent controlling Missouri Supreme Court case at the time of trial on the issue of an upper landowner's liability to a lower landowner.

the rights of lower landowners. Further, the existence and extent of other exceptions in which an upper landowner would be liable was unclear.

■ In 1993 our Missouri Supreme Court replaced the modified common enemy doctrine with the "rule of reasonable use." *Heins*, 859 S.W.2d at 690–91. In adopting this doctrine the supreme court held that surface water rights and liabilities were not exclusively property law questions, but were also to be analyzed as a form of nuisance. *Id.* at 689. The law of nuisance acknowledges and accommodates two conflicting rights: 1) the right of a property owner to control and use land for personal benefit and interest, and 2) the right of the public and adjoining land owners to prevent an unreasonable use which substantially impairs their peaceful enjoyment of land. *Farmer's Mut. Fire Ins. Co. v. Farmer*, 795 S.W.2d 104, 107 (Mo.App.1990). Nuisance is founded "on an unreasonable, unusual or unnatural land use that substantially impairs the right of the owners of the lower tenement to enjoy their property peacefully." *Hansen*, 801 S.W.2d at 74.

As analyzed under either property law or the law of nuisance, the elements of the rule of reasonable use are:

> each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable. Reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct. Liability arises when the defendant's conduct is either (1) intentional and unreasonable; or (2) negligent, reckless, or in the course of an abnormally dangerous activity. (citations omitted).

*Heins*, 859 S.W.2d at 689–90. Under *Heins* upper and lower landowners are to be treated alike and all questions of liability for actions taken with regard to surface water are to be analyzed under a reasonableness standard.

*Heins* was decided after the judgment was entered in the present case. Although we conclude that the rule announced in *Heins* applies to the disposition of this appeal,[2] we must first examine the trial court's judgment under then-existing law to resolve the issues raised relating to the trial court's inferred findings.

### B. *Natural Watercourse vs. Surface Water*

■ Both parties agree that this case involves surface water. Plaintiffs argue that the trial court erroneously treated this as a natural watercourse case. Plaintiffs base their argument on the rule of law that a landowner cannot obstruct a natural watercourse without liability to others. *See Happy v. Kenton*, 362 Mo. 1156, 247 S.W.2d 698, 700 (Mo.1952); *Haith v. Atchison County*, 793 S.W.2d 151, 155–56 (Mo.App.1990). Plaintiffs reason that, because the trial court imposed liability, it must have found the water at issue was a natural watercourse and such a finding was not supported by the evidence. We disagree. Liability could also have been imposed under the modified common enemy doctrine if the trial court found that the discharge did not flow into a natural drainway or that the discharge exceeded the natural capacity of the natural drainway. *Hansen*, 801 S.W.2d at 74. Accordingly, the finding of liability standing alone does not lead to the conclusion that the trial court erroneously treated this case as a natural watercourse instead of a surface water case. This point is denied.

### C. *Misapplication of Law*

■ In the alternative, plaintiffs argue that the trial court misapplied the law governing the right of an upper landowner to redirect surface waters. Plaintiffs argue that under *Haferkamp v. City of Rock Hill*, 316 S.W.2d 620, 625 (Mo.1958), *Haith*, and *Happy* they could not be found liable. These cases are consistent with *Hansen* in acknowledging that, under the modified common enemy doctrine, an upper landowner may be liable if that landowner discharged surface

**2.** See discussion under part I.D. of this opinion, *infra.*

water outside the natural drainway or caused the flow of surface water to exceed the natural capacity of the drainway, resulting in damage.

In this case there was substantial evidence to support a finding that the discharge exceeded the capacity of the natural drainway in defendants' backyard. Plaintiff John Kueffer testified that he filled in the front ditch intending the 42 inch culvert to carry the water that used to flow through the ditch. He acknowledged that the 42 inch culvert was inadequate to carry off the water. He also testified that he raised the north bank of his south ditch to back the water up. He admitted that, as a result, water that ordinarily would have flowed through the front ditch was diverted to the back drainage ditch. He admitted that when he changed the direction of the water, the water flowed into the swale in defendants' backyard and into defendants' basement. He also testified he was not aware of any water in defendants' basement before he diverted the water.

Plaintiffs' expert, Karl Freese, testified that the original front ditch along plaintiffs' property would have been more than adequate to handle all of the water runoff. However, the 42 inch pipe plaintiffs placed in their front ditch would be inadequate during heavy rain. He testified that when plaintiffs raised the north wall of their south drainage ditch this backed up the water in the ditch and the overflow would go to the ditch in the back of the house. He testified that when the water level in the main ditch reached 18 inches, the water then flowed into the ditch in the back of the property.

Freese also testified that to avoid the flooding of defendants' backyard and basement, several alternatives could be taken to adequately handle the water flow. One alternative would be to replace the 42 inch pipe in the front ditch with a 60 or 72 inch pipe. Another alternative would be to enlarge and reshape the swale that ran behind defendants' property.

Defendant Michael Brown testified that he never had water in his backyard or basement until after plaintiffs dug out and raised the bank of the diversion ditch along the south side of plaintiffs' property. He also testified

that the swale across the back of his property was a natural swale on the property when he bought it and was only ankle deep in places. He testified that he had not graded it or filled it in.

Accordingly, there was substantial evidence to support a finding that plaintiffs collected and diverted surface water into a natural swale in the rear of defendants' property in excess of its capacity so that it overflowed into defendants' yard and basement. This evidence supports a finding of liability under the modified common enemy doctrine.

### D. *Application of the Reasonable Use Doctrine*

We turn next to the application of the reasonable use doctrine. We must first determine if this doctrine is to be applied retroactively and, if it is, determine if the appeal can be decided under that doctrine on the record before us or if a remand is necessary.

#### (a) *Retroactivity of the Reasonable Use Doctrine*

The reasonable use doctrine is applicable to this appeal if it is retroactive. A decision overruling a prior rule of substantive law is generally applied retroactively. *Summers v. Summers*, 701 S.W.2d 720, 722–23 (Mo. banc 1985). However, "[i]f the parties have relied on the state of the decisional law as it existed prior to the change, courts may apply the law prospectively-only in order to avoid injustice and unfairness." *Id.* at 723. A Missouri Supreme Court decision overruling a prior rule of substantive law should be given prospective-only effect if the following three conditions are met: (1) if the decision establishes a new principle of law by overruling clear past precedent; (2) if the purpose and effect of the newly announced rule will be retarded by retroactive application; and (3) if, after balancing the interests of those who may be affected by the change in law and weighing the degree to which parties may have relied upon the old rule and the hardship the parties might suffer from retroactive application of the new rule against the possible hardship to the parties who would be denied the benefit of the new rule, retro-

spective application would be unfair. *Id.* at 724.

In applying the first *Sumners* factor to surface water cases tried before *Heins*, the Western District has held that *Heins* substantively changed the law by establishing a new principle of law in that it overruled past precedent by replacing the modified common enemy doctrine with the rule of reasonable use. *Campbell v. Anderson*, 866 S.W.2d 139, 144 (Mo.App.1993); *Mo. Hwy. & Transp. Com'n v. Rockhill Dev.*, 865 S.W.2d 765, 768 n. 1 (Mo.App.1993). We agree that this doctrine establishes a new principle of law with respect to the resolution of many surface water issues. For example, prior to *Heins* the Missouri Supreme Court stated that reasonableness was not a question for the court or jury with respect to the right of a lower landowner to dam surface water from above. *M.H. Siegfried R. Est. v. City of Independence*, 649 S.W.2d 893, 897 (Mo. banc 1983).

However, prior to *Heins*, reasonableness was used to analyze upper landowner liability and to create certain exceptions to the modified common enemy doctrine. *See, e.g., Haferkamp*, 316 S.W.2d at 625, 627; *Happy*, 247 S.W.2d at 700. *Haferkamp* recites that,

> a landowner in the *reasonable* use and development of his land may drain it by building thereon sewers, gutters and such other artificial water channels for the purpose of carrying off the surface waters into a "natural surface-water channel" ... located on his property without liability to the owner of neighboring land, even though such method of ridding his property of surface water, accelerates and increases the flow thereof, provided that he acts without negligence, and provided further *that he does not exceed the natural capacity of the drainway to the damage of neighboring property.*

316 S.W.2d at 625–26 (emphasis added).

In analyzing the above rule, commentators have stated that Missouri courts were leaning to the rule of reasonable use without

calling it such.[3] In *Roberts v. Hocker*, 610 S.W.2d 321 (Mo.App.1980), our Western District noted,

> As our decisions show, our law of surface water in fact tends to a rule of reasonable use—however umbrous the bounds—to take into account the rights of each landowner to the fair enjoyment of the land, at least to the extent that the surface water shall not be deployed negligently onto the land of the other.

*Id.* at 327–28 n. 5. And as stated in *Heins*, "[t]o some extent [reasonable use concepts] have also applied to upper landowners through the modified common enemy doctrine." *Heins*, 859 S.W.2d at 691.

In defining what a landowner can do in the reasonable use of his or her land prior to *Heins*, Missouri cases have specifically and repeatedly excluded the diversion and discharge of surface water into a lower owner's natural drainway in excess of its capacity. *Haferkamp*, 316 S.W.2d at 625–26; *Miller Land Company v. Liberty Township*, 510 S.W.2d 473, 476 (Mo.1974); *Eilers v. Kodner Development Corporation*, 513 S.W.2d 663, 666 (Mo.App.1974); *Roberts*, 610 S.W.2d at 326–27. As summarized in *Hansen*,

> it is not an unreasonable use of an upper tenement—and thus not a nuisance—to undertake development of higher land unless the effect of such development becomes unreasonable because the upper landowner discharges water outside the natural drainway or discharges surface water onto the natural drainway in excess of the capacity of that drainway.

801 S.W.2d at 75.

Cases have thus concluded that the draining off of surface water in such a manner as to exceed the natural capacity of the drainways is in itself actionable. *Looney v. Hindman*, 649 S.W.2d 207, 211 (Mo. banc 1983); *Eilers*, 513 S.W.2d at 666. Exceeding the natural capacity of a drainway has also been classified as an act of negligence. *Skaggs v. City of Cape Girardeau*, 472 S.W.2d 870, 875

---

**3.** Snodgrass & Davis, *The Law of Surface Water in Missouri*, 24 Mo.L.Rev. 281, 311 (1959), also stating:

> In the mind of the court this rule was but a specific application of the general statement

found in many Missouri cases that the common enemy doctrine must be exercised within reasonable limits.

(Mo.App.1971). Further, the discharge of surface water in excess of the natural capacity of a drainway has also been found to constitute a nuisance. *Hansen,* 801 S.W.2d at 75.

Accordingly, *Heins* did not clearly overrule precedent with respect to surface water cases such as this one where an upper landowner was found liable for discharging surface water onto a lower landowner in excess of the natural capacity of the drainway. Because *Heins* did not substantively change the law applicable to the liability issues in this case, prospective-only application is not warranted, and we need not address the remaining factors under *Sumners.* The reasonable use doctrine applies to this case.

### (b) *Remand*

■ We next consider whether the retroactive application of *Heins* requires a remand. If the decisive issues under the rule of reasonable use were litigated and there is no suggestion or indication that evidence made relevant by this rule was not presented, remand is not required. *See Owens v. Owens,* 707 S.W.2d 834, 835 (Mo.App.1986). "[J]ustice does not require a remand to permit a party to relitigate a factual issue that was before and decided by the trial court." *In re Marriage of Herr,* 705 S.W.2d 619, 621 (Mo.App.1986). However, where there is a "dearth of evidence" relative to the new rule, a remand is required. *Id.* at 621; *Owens,* 707 S.W.2d at 835.

Under the rule of reasonable use, a landowner is liable if the landowner's collection and discharge of surface water is unreasonable. Reasonableness is a fact question to be determined in each case by weighing the gravity of the harm to the party claiming damages against the utility of the landowner's conduct. *Heins,* 859 S.W.2d at 689.

As we have held, the evidence in this case supported a finding of liability on the basis that plaintiffs discharged surface water into defendants' natural drainway in excess of its capacity. Plaintiffs defended on the basis that their actions were reasonable. In his opening remarks, plaintiffs' attorney advised the court that his clients "can use reasonable means to divert the water … subject to the modified common [enemy] rule, and they have done it in a reasonable manner." Both parties introduced evidence relating to the diversion and discharge of the water. Plaintiffs adduced evidence relating to the utility of their conduct. Defendants presented evidence of their damages. The rule of reasonable use makes the same evidence relevant. As a result, there is no need to remand.

### (c) *Conclusion*

■ Missouri cases have consistently held an upper landowner's discharge of surface water into a lower landowner's natural drainway in excess of its capacity to be actionable, on the grounds that such conduct is unreasonable, negligent, and/or a nuisance. The rule of reasonable use provides for liability when the land use causing damage is unreasonable, as defined in the law of nuisance, or negligent. The trial court's implicit factual finding that plaintiffs diverted and discharged surface water in excess of the capacity of defendants' natural drainway accordingly provides a basis for liability under the reasonable use doctrine. This point is denied.

## II. *Damages*

### A. *Causation*

■ Plaintiffs next challenge the trial court's award of damages. Plaintiffs first assert that there was no competent evidence supporting a finding that plaintiffs' acts caused any of the damage suffered by defendants. Damages are not recoverable for a loss unless defendants' conduct proximately caused plaintiffs' loss. *Creech v. Riss & Company,* 285 S.W.2d 554, 561 (Mo.1955). In determining the sufficiency of the evidence, "we will accept as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence." *Braeshire Condo. Bd. v. Brinkmeyer,* 841 S.W.2d 217, 219 (Mo.App.1992). Furthermore, the credibility of witnesses is a matter for the trial court to resolve, "who may believe none, part or all of their testimony." *Haith,* 793 S.W.2d at 156.

Plaintiffs argue under this point that the only witness to testify on the issue of causation was defendant Michael Brown and that he was not competent to testify to the cause of the flooding on his property. Plaintiffs contend that Brown had no specialized competence in this area and that lay witnesses may not offer opinions in areas requiring specialized knowledge, citing *Kennedy v. Union Electric Co. of Missouri*, 358 Mo. 504, 216 S.W.2d 756 (Mo.1948) and *Grace v. Union Electric Co.*, 239 Mo.App. 1210, 200 S.W.2d 364 (Mo.App.1947).

No objection was made to Brown's testimony at trial. Further, this case is not governed by either *Kennedy* or *Grace*. Brown did not give an opinion as to the cause of the flooding, but testified to the observable facts that, before plaintiffs raised the bank of their diversion ditch, he never had water in his backyard or basement. After plaintiffs made this change, his backyard flooded and the water ran into his basement. In addition to Brown's testimony and evidence, other evidence supported a finding of causation, including that of plaintiff John Kueffer and that of plaintiffs' expert, Karl Freese, as previously set out in this opinion. There was substantial evidence of causation. This point is denied.

### B. *Amount of Damages*

The trial judge awarded damages to defendants in the amount of $12,000. Plaintiffs contend that under the evidence no more than $10,000 could be awarded. Plaintiffs also argue that the award should actually be no higher than $4,500 since Brown testified he could make his own repairs for this amount. "A trial court's findings as to damages recoverable are entitled to great weight on appeal and will not be disturbed unless it is shown that the damages awarded were clearly wrong, could not have been reasonably determined, or were excessive." *Iota Management v. Boulevard Inv. Co.*, 731 S.W.2d 399, 419 (Mo.App.1987).

The measure of damages for partial destruction of property in a surface water case is the same as in other cases of injuries to real property. *Belveal v. H.B.C.*

*Development Company*, 279 S.W.2d 545, 554 (Mo.App.1955). As expressed in *Belveal*,

When the damage to real estate is permanent and the injuries of a major character, the proper measure of damages is the difference between the market value of the (property) immediately before and after the injuries occurred and there must be evidence of such values. [citation omitted] If, however, the damaged property can be restored to its former condition, and, the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof, the reasonable cost of repairing the property may be shown as a basis for determining the value to plaintiff of the property before and after the accident. (citations omitted).

*Belveal*, 279 S.W.2d at 554. Thus, when the property can be restored, damages are measured either by the difference in the fair market value of the property before and after the injury or by the cost of restoring the property, whichever is the lesser amount. *Farmer's*, 795 S.W.2d at 108.

At trial Brown testified his landscaping, garden, air conditioning, foundation, wood porch, and deck were all damaged by the water from plaintiffs' property. Brown was in the air conditioning, heating, refrigeration and electrical trades and had twelve years experience estimating the costs of repairs. In addition he had personally built the porch and deck. He testified to the cost of repairing the water damage as follows: "If I do the work myself, it's about $4500. If I contract it out, it's about $10,000." Brown also testified that the appraised value of his house before the damage was $87,000, and that he estimated its value after the damage was $60,000. Since the cost of repair was less than the diminution in value, the amount of damages should be the cost of repair.

However, plaintiffs argue that "simple fairness" mandates that the damages should be no higher than $4,500, the cost of repair if Brown did the work himself. Plaintiffs cite no authority to support their argument that parties must donate their own labor in calculating the cost of repair. "We are not required to address assertions made

without reasoning." *Big Boys Steel v. Hercules Const. Co.*, 765 S.W.2d 684, 687 (Mo. App.1989).

Although the cost of repair was $10,000, the trial court awarded $12,000 as damages. Defendants argue that the trial court was within its discretion to award $12,000. They contend reduction of value should be considered in damages because their basement will continue to flood unless plaintiffs make the necessary repairs, and their home is not marketable under current conditions. As we have held, defendants are not entitled to reduction in value. They did not offer evidence of any repair costs in excess of $10,000. Accordingly, the $12,000 award, in lieu of a $10,000 award, was not supported by substantial evidence.

The judgment is reduced to $10,000 and affirmed as so modified. Plaintiffs' motion to strike defendants' brief is denied.

KAROHL and CRAHAN, JJ., concur.