**John FARLEY and Rebecca Farley, Respondents,**

v.

**WAPPAPELLO FOODS, INC., Appellant.**

**No. 21372.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 9, 1997.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 30, 1997.

Application for Transfer Denied Feb. 24, 1998.

Albert C. Lowes, Lowes & Drusch, Cape Girardeau, for Appellant.

Robert L. Smith, Smith & Miller, Poplar Bluff, for Respondents.

CROW, Judge.

This lawsuit is about surface water.

Plaintiffs, John Farley and Rebecca Farley, own a tract of land. They reside in a house on the tract.

Defendant, Wappapello Foods, Inc., owns a tract of land adjacent to Plaintiffs' tract. Defendant's tract "slopes down" toward Plaintiffs' tract.

Prior to 1990, Defendant's tract was undeveloped. Surface water flowed from Defendant's tract onto Plaintiffs' tract; however, Plaintiff John Farley testified this occurred only when there were "massive like gully washers."

In 1990, Defendant constructed a store and concrete parking lot on its tract. In doing so, Defendant had several thousand cubic yards of fill dirt placed on the site.

In this suit, Plaintiffs averred the construction of the store and parking lot caused an increase in the flow of surface water from Defendant's tract onto their tract.

A jury returned a verdict awarding Plaintiffs $3,100. The trial court entered judgment per the verdict. Defendant appeals.

We first address Defendant's third (and final) point relied on, which reads:

"The trial court erred in failing to grant a directed verdict for Defendant in that all the evidence showed was that the Defendant made reasonable use of its property, which it is legally privileged to do, nor could reasonable minds conclude otherwise because reasonableness is a question of fact to be determined by weighing the gravity of the harm to [Plaintiffs] against the utility of Defendant's conduct, and the harm from the surface water runoff was minimal as fewer acres of drainage flowed on to [Plaintiffs'] property and this is insufficient especially when weighed against the utility of [Defendant's] conduct in building a supermarket to the rural Wappapello community."

As we comprehend the parties' briefs, they agree that the law applicable to this assignment of error is set forth in *Heins Implement Co. v. Missouri Highway & Transportation Commission*, 859 S.W.2d 681 (Mo. banc 1993), a surface water case in which the Supreme Court of Missouri adopted "the rule of reasonable use." *Id.* at 690–91[10].

Those interested in the history of the law of surface water can study segments A through C of part III of the *Heins* opinion, *id.* at 686–91. In resolving Defendant's third point in the present appeal, we need only quote the portion of *Heins* which recites the new rule:

"[E]ach possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable. Reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct. Liability arises when the defendant's conduct is either (1) intentional and unreasonable; or (2) negligent, reckless, or in the course of an abnormally dangerous activity."

*Id.* at 689–90[7–9] (citations omitted).

Defendant emphasizes that its expert, Samuel H. Smith, a consulting engineer, testified that before the store and parking lot were constructed, surface water from 2.31 acres of Defendant's tract flowed onto Plain-

tiffs' tract. Since construction, surface water from part of that area now drains away from Plaintiffs' tract. According to Smith, Plaintiffs now receive flow from only 1.99 acres of Defendant's tract. However, because the store and parking lot do not absorb water, Smith determined that the volume of water flowing from Defendant's tract onto Plaintiffs' tract has increased by 2.9 percent.

Defendant maintains this "minuscule amount of harm" is insufficient to impose liability on Defendant, as the privilege of reasonable use recognized in *Heins* shields a landowner from liability even though the flow of surface water is altered thereby and causes some harm to others. Defendant argues that the only harm Plaintiffs suffered was the flooding of their driveway "a little bit more" than it formerly flooded, and the invasion of "a tiny amount of sewage" that escaped from a "septic line" on Defendant's tract.

In support of its argument that Plaintiffs' harm was too slight to justify an award of damages, Defendant points out that the harm suffered by the complaining landowners in *Heins, id.* at 684, and *Kueffer v. Brown,* 879 S.W.2d 658, 661 and 666 (Mo.App. E.D.1994), was "vast" compared to Plaintiffs' harm.

In response, Plaintiffs emphasize that Plaintiff John Farley testified he spent about $418 for gravel and approximately $47 for pipe in an effort to remedy the flooding of Plaintiffs' driveway. Additionally, he spent $980 for an "engineering study" to see what could be done to alleviate the problem. At time of trial, he was having a new "field line" installed on Plaintiffs' septic system because the water flowing onto Plaintiffs' tract from Defendant's tract creates a puddle where Plaintiffs' septic line ends. As a result, the effluent from Plaintiffs' line "boils up" and is "all black and gooey." The cost of this project will be around $767. Furthermore, he spent $47 to have the water in Plaintiffs' well tested. The expenses in this paragraph total $2,259.

Plaintiffs also remind us that their evidence showed they lost the use of part of their tract "because of all that water." According to Plaintiff John Farley, "You can't walk through it."

Where a defendant asserts on appeal that the trial court erred in denying the defendant's motion for a directed verdict on the plaintiff's claim, the appellate court examines the evidence to determine whether the plaintiff presented substantial evidence that tends to prove the facts essential to the plaintiff's claim. *Lasky v. Union Electric Co.,* 936 S.W.2d 797, 801[5] (Mo. banc 1997). In so doing, the appellate court views the evidence in the light most favorable to the plaintiff, affording the plaintiff all reasonable inferences from the evidence and disregarding the defendant's evidence that contradicts the plaintiff's claims. *Id.* If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper. *Id.* at [6].

Applying that standard of review, we hold the trial court did not err in failing to grant Defendant a directed verdict. In so holding, we do not ignore Defendant's reference to *Missouri Highway & Transportation Commission v. Rockhill Development Corp.,* 865 S.W.2d 765 (Mo.App. W.D.1993). In that case, as here, there was drainage from less acreage of high ground onto low ground after the construction project than before. *Id.* at 769[11]. However, in *Rockhill,* there was also less water diverted onto the low ground after the project than before. *Id.*

In the instant case, even Defendant's expert testified Plaintiffs' tract receives more water from Defendant's tract now than it did before Defendant put the store, the fill dirt, and the parking lot on its tract. Thus, unlike *Rockhill,* the evidence here showed Defendant's activity increased the drainage onto Plaintiffs' tract.

We are mindful that surface water drained from Defendant's tract onto Plaintiffs' tract before 1990. However, Plaintiff John Farley testified this occurred only during a heavy rain, and "within an hour [the water] was gone." He added, "I could mow within one day after a big rain."

Viewing the evidence in the light most favorable to Plaintiffs, we conclude reasonable minds could differ on whether the gravi-

ty of the harm to Plaintiffs outweighed the utility of Defendant's conduct. Consequently, whether Defendant's conduct in increasing the volume of surface water flowing from its tract onto Plaintiffs' tract was reasonable was a question of fact to be determined by the jury. *Heins,* 859 S.W.2d at 689[8]. Defendant's third point is denied.

We next consider Defendant's second point. It avers the trial court erred in giving Instruction 6, the verdict-directing instruction for Plaintiffs. Instruction 6 read:

> "Your verdict must be for the plaintiff [sic] if you believe:
>
> First, plaintiff [sic] used his [sic] property as a residence and a business, and
>
> Second, Defendant constructed a parking lot, building and sewer system upon its property in such a manner that it altered the flow of surface waters and allowed sewage to seep onto the plaintiffs' property, and
>
> Third, that such caused erosion, washing away of soil, depositing of sediments from Defendant's property, the collection of water upon plaintiffs' property and ill-smelling oders [sic] and sewage upon plaintiffs' property and this substantially impaired plaintiffs' use of their property, and
>
> Fourth, such use by defendant of its property was unreasonable."

Defendant attacks Instruction 6 on three grounds. First, Defendant argues the instruction submitted a theory of recovery different than the one pled, in that Plaintiffs pled the "old" modified common enemy theory, whereas Instruction 6 submitted the "new" *reasonable use theory.*

Plaintiffs insist they pled facts sufficient to invoke the reasonable use theory, but even if not, Defendant registered no objection at trial to Plaintiffs' evidence on the ground that it was irrelevant to the theory pled, hence the petition is deemed amended to conform to the evidence.

In *Kueffer,* 879 S.W.2d at 661, the trial occurred before the Supreme Court of Missouri decided *Heins,* thus the applicable law

at time of trial was the modified common enemy doctrine. By the time *Kueffer* reached the appellate court, *Heins* was in the books. The appellate court held the reasonable use doctrine adopted in *Heins* applied in *Kueffer.* 879 S.W.2d at 663–65[7].

The appellate court in *Kueffer* then faced the question of whether the retroactive application of *Heins* required remand. *Id.* at 665. The appellate court held that if the decisive issues under the rule of reasonable use were litigated and there was no indication that evidence relevant under that rule was not presented, remand was not required. *Id.* Upon examining the evidence, the appellate court concluded that the landowners against whom damages were sought defended on the basis that their actions were reasonable. *Id.* Additionally, their lawyer, in opening remarks, stated his clients could use reasonable means to divert the water, and they had done so in a reasonable manner. *Id.* Additionally, the landowners from whom damages were sought adduced evidence relating to the utility of their conduct. *Id.* Noting that justice does not require a remand to permit a party to relitigate a factual issue that was before and decided by the trial court, the appellate court held no remand was necessary in *Kueffer. Id.* at [8].

■ Similar circumstances are demonstrated by the record here.

Defendant's answer pled that the construction on Defendant's land was "strictly reasonable," and that the flow of surface water was not "beyond that that would normally be expected when people improve their property ... which the law permits this defendant to do."

During his opening statement, Defendant's lawyer told the jury: "Our proof will be that these men[1] did nothing but make reasonable use of their property. They had no intention of doing anything negligent or careless...."

During testimony by one of Defendant's shareholders, Defendant's lawyer adduced testimony that neither of Defendant's two shareholders did anything other than try to

---

1. Defendant's lawyer was apparently referring to Defendant's shareholders.

improve Defendant's property or make reasonable use of it.

The record thus reveals Defendant understood at time of trial that the law applicable to this suit was the rule of reasonable use in *Heins*. Defendant does not identify any evidence it could have presented, but did not, because of confusion about Plaintiffs' theory of recovery, nor does Defendant cite any tactics it would have changed had Plaintiffs' petition unequivocally pled the reasonable use rule.

Consistent with *Kueffer*, 879 S.W.2d at 665[8], we hold the fact issues pertinent to a claim under the reasonable use rule were litigated at trial in the instant case, hence Instruction 6, which ostensibly submitted that theory of recovery, does not compel reversal on the ground that it submitted an allegedly unpled theory.

Defendant's second attack on Instruction 6 is that it failed to submit every element necessary to Plaintiffs' recovery. Specifically, says Defendant, Instruction 6 omitted "the mental elements," i.e. that Defendant's conduct was intentional and unreasonable. As we understand Defendant, this attack is based on the passage in *Heins* which states that liability arises when the defendant's conduct is intentional and unreasonable. 859 S.W.2d at 689–90[9].

As one might expect, there is no MAI instruction for a submission under the rule of reasonable use adopted in *Heins*. Plaintiffs based Instruction 6 on MAI 22.06 [1969 New], which antedates *Heins*. The relevance of MAI 22.06 [1969 New], a verdict-directing instruction for a private nuisance claim, is explained *infra.*

Rule 70.03 [2] requires "specific objections to instructions considered erroneous." Rule 70.03 provides that no party may assign as error the giving of an instruction unless such party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

■ We have carefully studied the objections to Instruction 6 voiced by Defendant's lawyer at the instruction conference. We do not find in those objections any complaint that Instruction 6 omits the "mental elements" of intentional and unreasonable conduct. Consequently, that claim of error is not preserved for review. Rule 70.03; *Metro Waste Systems, Inc. v. A.L.D. Services, Inc.*, 924 S.W.2d 335, 338[4] (Mo.App. E.D.1996); *French v. Missouri Highway and Transportation Commission*, 908 S.W.2d 146, 150[3] (Mo.App. W.D.1995). Any review would thus be gratuitous, and would be confined to a determination of whether the alleged omission of the "mental elements" from Instruction 6 constituted plain error under Rule 84.13. *French*, 908 S.W.2d at 150[3].

We find no plain error.

■ As to the "mental element" of intentional conduct, Instruction 6 hypothesized that Defendant constructed a parking lot, a building, and a sewer system on its property, and in doing so altered the flow of surface waters and allowed sewage to seep onto Plaintiffs' property. The evidence demonstrated that all of the construction was done intentionally, and that in the construction process, Defendant intentionally brought fill dirt onto its property. The jury could have reasonably found that those intentional acts increased the drainage of surface water from Defendant's property onto Plaintiffs' property and resulted in seepage of sewage onto Plaintiffs' property.

Accordingly, although Instruction 6 may not have been a perfect instruction hypothesizing that Defendant's conduct was intentional, we find no manifest injustice or miscarriage of justice warranting relief under Rule 84.13.

As to the "mental element" of unreasonableness, Instruction 6 hypothesized that the use Defendant made of its property was unreasonable. To aid the jury on that issue, the trial court gave Instruction 8, tendered by Plaintiffs. It read:

2. Rule references are to Missouri Rules of Civil Procedure (1997). The version of Rule 70.03 appearing there took effect January 1, 1994. Vol. 851–852 S.W.2d Missouri Cases, pp. LX–LXI. That version was in force when the instant case was tried.

"The term 'unreasonableness' as used in these instructions is a question of fact to be determined by weighing the gravity of the harm to the Plaintiff [sic] against the utility of the Defendant's conduct."

The above instruction was based on the passage in *Heins* which states that reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct. 859 S.W.2d at 689[8].

Instructions 6 and 8 therefore gave the jury guidance on the "mental element" of unreasonableness—at least enough guidance to rebut a contention that Instruction 6 warrants plain error relief for failing to submit the "mental element" that Defendant's conduct was unreasonable.

As an adjunct of its second attack on Instruction 6, Defendant maintains the instruction failed to submit "the absence of privilege." In support of its notion that "the absence of privilege" is an element of a cause of action under the rule of reasonable use, Defendant seizes upon a phrase from *Kueffer*, 879 S.W.2d at 662, where, as a preface to quoting the same segment of the *Heins* opinion that is quoted earlier in our opinion, the *Kueffer* court said: " ... the elements of the rule of reasonable use are.... " The *Kueffer* court then quoted the passage from *Heins* which begins "[E]ach possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Heins*, 859 S.W.2d at 689[7].

Reading the passage from *Kueffer* in context, it is clear that *Kueffer* does not say "the absence of privilege" is an element of a cause of action under the rule of reasonable use. Rather, the law is that one may make a reasonable use of his land, and in doing so may alter the flow of surface waters thereby causing harm to others, but cannot escape liability for the harm if his interference with the flow is unreasonable. In short, there is no "privilege" to engage in unreasonable conduct that alters the flow of surface water and thereby harms another. A determination that the harmful conduct is unreasonable is, *a fortiori*, a determination that the actor had no "privilege" to engage in it.

The test for determining reasonableness—a question of fact—is set forth in *Heins*, 859 S.W.2d at 689[8]. As noted earlier, that was the source of Instruction 8 in the instant case. In finding Defendant liable, the jury evidently determined that Defendant's conduct was unreasonable, i.e., the gravity of the harm to Plaintiffs outweighed the utility of Defendant's conduct—the test in Instruction 8. As Defendant's harmful conduct was unreasonable, he had no "privilege" to engage in it.

Instructions 6 and 8 thus guided the jury in determining whether Defendant was "privileged" to engage in the harmful conduct. Defendant's contention that the judgment must be reversed because Instruction 6 failed to submit "the absence of privilege" is without merit.

The final attack on Instruction 6 in Defendant's second point is that the instruction improperly submitted "evidentiary details" including "altering the surface water onto Plaintiffs' property and depositing sediments from Defendant's property." Defendant cites cases holding that a verdict-directing instruction must submit only ultimate facts, not evidentiary details.

As reported earlier in this opinion, there is no MAI instruction directing a verdict in a cause of action under the rule of reasonable use adopted in *Heins*. However, Plaintiffs point out that in *Heins*, the Supreme Court of Missouri explained that the *Restatement (Second) of Torts*, § 833 (1977), declares that an invasion of one's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water is to be analyzed as a form of nuisance. 859 S.W.2d at 689[6]. As we have seen, Instruction 6 was based on MAI 22.06 [1969 New], a verdict-directing instruction submitting a claim based on private nuisance.

Instruction 6 closely follows MAI 22.06 [1969 New]. Defendant does not argue that any fact hypothesized in Instruction 6 lacked evidentiary support, nor does Defendant explain how Instruction 6 was prejudicial to Defendant. Given those circumstances, and

mindful that (a) *Heins* indicates Defendant's conduct in the instant case is to be analyzed as a form of nuisance, and (b) Instruction 6 tracked the MAI verdict-directing instruction on private nuisance, we hold Defendant's final attack on Instruction 6 is without merit. Defendant's second point is denied.

Defendant's first point, the only one not yet addressed, avers the trial court erred in giving Instruction 9. That instruction, based on MAI 4.02 [1980 Revision] read:

"If you find in favor of plaintiffs, then you must award plaintiffs such sum as you may find from the evidence to be the difference between the fair market value of plaintiffs' property before it was damaged and its fair market value after it was damaged, or the cost of restoring the property, whichever is the lesser amount, plus any sum as you may find from the evidence will fairly and justly compensate plaintiffs for the loss of use thereof during the time reasonably necessary for the property to be repaired or replaced."

Defendant correctly points out that note 1 of the "Notes on Use" for MAI 4.02 requires that the phrase "fair market value" be defined. The required definition does not appear in Instruction 9.

Plaintiffs candidly admit Instruction 9 should have contained the definition of fair market value. *See:* MAI 16.02 [1978 Revision]. However, Plaintiffs insist the omission was harmless error in that it did not materially affect the merits of the action. Plaintiffs cite *Patton v. May Department Stores Co.,* 762 S.W.2d 38, 42 (Mo. banc 1988), which holds, consistent with Rule 84.13(b), that a judgment should be reversed for instructional error only when the error materially affects the merits of the action.

Defendant, citing *Floyd v. Brenner,* 542 S.W.2d 325 (Mo.App.1976), maintains the flaw in Instruction 9 requires reversal of the judgment and remand for a new trial on all issues. In *Floyd,* as here, the damages instruction submitted fair market value without the mandatory definition. *Id.* at 328. The judgment was reversed and a new trial was ordered. *Id.*

In contrast, in *Lane v. Cape Mutual Insurance Co.,* 674 S.W.2d 644 (Mo.App. E.D. 1984), cited by Plaintiffs, the damages instruction did not contain the mandatory definition of fair market value. *Id.* at 645. The appellate court held the omission affected only the issue of damages, hence the court affirmed the part of the judgment pertaining to liability. *Id.* The part of the judgment pertaining to damages was reversed, and a new trial was ordered on only that issue. *Id.*

■ Rule 70.02(c) provides that the giving of an instruction in violation of the provisions of Rule 70.02 shall constitute error, its prejudicial effect to be judicially determined. For the reasons set forth below, we hold Defendant suffered no prejudice from the absence of the definition of fair market value in Instruction 9.

Plaintiff John Farley testified the value of Plaintiffs' property before Defendant built the store was around $150,000, whereas after the store was built, Plaintiffs' property was worth only "about half" that much.

In final argument, Plaintiffs' lawyer reminded the jury that according to Plaintiffs' evidence, the difference between the value of Plaintiffs' property before Defendant built the store and the value of Plaintiffs' property afterward was around $75,000. Plaintiffs' lawyer then cautioned the jury that under Instruction 9, if the cost of restoring Plaintiffs' property was less than the decrease in fair market value, Plaintiffs were entitled to only the cost of restoration plus compensation for loss of use during the time reasonably necessary for repair or replacement. Plaintiffs' lawyer continued:

"Seventy-five thousand dollars ... is a greater amount so you can't go to that. You are going to have to go to the lesser amount, the cost of repairing or restoring the property plus the compensation for the lack of use. Well, he testified that he spent about twenty-five hundred dollars ... on this property trying to keep the water off."

Evidently, in the final sentence quoted above, Plaintiffs' lawyer was referring to the expenses totalling $2,259 mentioned earlier in this opinion.

It is clear from the argument of Plaintiffs' lawyer that he warned the jurors they could not award Plaintiffs the difference between the fair market value of their property before Defendant built the store and the fair market

value of their property afterward. The damages awarded by the jury, $3,100, confirm that the jury, consistent with the argument of Plaintiffs' lawyer, did not base the award on the decrease in the fair market value of Plaintiffs' property. Consequently, even though Instruction 9 was erroneous because it failed to include the mandatory definition of fair market value, the unique circumstances of this case demonstrate the omission was not prejudicial to Defendant.

Defendant's first point is denied, and the judgment is affirmed.[3]

GARRISON, P.J., and PREWITT, J., concur.

---

**3.** The judgment does not adjudicate a count in Plaintiffs' petition seeking injunctive relief. Pursuant to Rule 74.01(b), the trial court determined there was no just reason for delay in entering judgment on the jury verdict. By doing so, the trial court made the judgment appealable. *Missouri Hospital Association v. Air Conservation Commission*, 900 S.W.2d 263, 266 (Mo.App. W.D.1995).