Jerry JORDAN and Shirley Jordan,
Plaintiffs–Respondents,

v.

John H. STALLINGS, Jr.,
Defendant–Appellant.

No. 19930.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 27, 1995.

King E. Sidwell, Blanton, Rice, Sidwell & Ottinger, Sikeston, defendant-appellant.

James M. McClellan, Dempster, Barkett, McClellan & Edwards, Sikeston, plaintiffs-respondents.

GARRISON, Judge.

This is an appeal by John H. Stallings, Jr. (Defendant) from a $5000 judgment entered by the trial court on the petition of Jerry Jordan and his wife, Shirley (Plaintiffs). The court found that Defendant "did trespass on the property of the Plaintiffs and without Plaintiffs' consent removed dirt and soil from Plaintiffs' land thereby causing a permanent nuisance with run off water onto Plaintiffs' property constituting an unreasonable interference with the use and enjoyment of Plaintiffs' land." We affirm in part and reverse in part.

A part of the land involved in this suit was the subject of a deed for a 100–foot right of way to the Cairo and Fulton Railroad Company in 1857 and on which a railroad was later built. The right of way separated the properties of the parties, with Plaintiffs' being on the south and Defendant's on the north. A portion of the right of way was elevated and included ballast, consisting of rock or gravel, which formed the rail bed on which the ties and rails were laid.

The Union Pacific Railroad contracted with the Omaha Tie Yard for the removal of the ties, rails and ballast from the right of way.[1] Omaha removed the rails and ties in late 1988 or early 1989, and then contracted with Frank Ferrell for the removal of the ballast, which he completed sometime during the first half of 1989. Mr. Ferrell testified that he removed only the ballast and left whatever dirt remained. Other testimony indicated that after the ballast was removed, a part of the right of way was elevated one to two feet above the surrounding ground. In 1991, the Missouri Pacific Railroad executed a disclaimer to the right of way.[2]

Plaintiff Jerry Jordan testified that in August, 1989, he discovered a bulldozer, hired

---

1. Although there was no evidence to support this statement, the parties appear to agree in their briefs that it is accurate.

2. The parties referred to both the Union Pacific Railroad and the Missouri Pacific Railroad throughout the record without explanation. No issue is raised concerning the proper identity of the railroad referred to. As a consequence, for the purpose of clarity, we refer hereafter merely to "the railroad."

by Defendant, operating on what he described as his land, which apparently included parts of the south half of the right of way. Mr. Jordan testified that he spoke with Defendant, who was also present, and told him that one-half of the railroad right of way was his, and he would like to leave it the way it was. He said Defendant told him that he was going to move the dirt around to fill a low place on Defendant's side of the right of way. According to Mr. Jordan, however, the bulldozer leveled an area 18 inches high, 10 feet wide, and 800 feet long on his side of the right of way, without his permission.

The petition filed by Plaintiffs was in three counts. The first count alleged that Defendant rearranged the topography of the land so that the right of way no longer acted as a dam to prevent the flow of water from Defendant's property, and subsequently Plaintiffs were denied the right to enjoy their property because water flowed from Defendant's property onto theirs, causing significant damage to its value and quality. The second count alleged that Defendant had made an unreasonable, unusual and unnatural use of his property so as to substantially impair the rights of Plaintiffs to enjoy their property, thereby creating a permanent nuisance. Count Three alleged a trespass by Defendant when he entered Plaintiffs' land and bulldozed what was referred to as the dam.

On this appeal, Defendant contends that: Plaintiffs did not have an ownership interest in the right of way at the time of the acts complained of; the evidence was insufficient to support a judgment for trespass or nuisance; Defendant's conduct was not actionable under the reasonable use doctrine; Plaintiffs should not have been permitted to re-open their case and present additional testimony; and under the evidence, the judgment should have been for no more than $1000.

■ In a court-tried case such as this, the standard for appellate review is found in Rule 73.01(c).[3] As construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), it provides that the judgment is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Under this standard of review, considerable deference is accorded judgments based on evidentiary and factual evaluations by the trial court. *Rougly v. Whitman*, 592 S.W.2d 516, 519 (Mo. App.E.D.1979).

Defendant's first point relied on is:
The trial court erred in finding that Mr. Stallings trespassed on the Jordans' property in that the Jordans did not have [sic] ownership interest in that tract of property at the time, and, even assuming otherwise, neither damages nor intentional interference with the Jordan's [sic] property was proven.

This point varies from the requirements of Rule 84.04(d), which provides that a point relied on shall state "wherein and why" the rulings of the trial court are claimed to be erroneous. These requirements are explained in *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978), as follows:
After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

The point in the instant case does not specify wherein the evidence gave rise to the conclusory statement that Plaintiffs did not have an ownership interest in the tract in question. We also note that Defendant is attempting to raise more than one issue in this single point, contrary to *Thummel v. King*, 570 S.W.2d at 688. In this instance, we have referred to the argument section of the brief in an effort to determine the import of the point, although we are not obliged to do so. *Greene County Concerned Citizens v. Board of Zoning Adjustment*, 873 S.W.2d 246, 255 (Mo. App.S.D.1994).

---

3. All references to rules are to Missouri Rules of Court, V.A.M.R.

■ Defendant argues that Plaintiffs had no ownership possessory interests in the right of way when he is alleged to have trespassed in August, 1989. The basis of his argument is that the original deed to the railroad conveyed a fee simple title which it and its successors retained until the railroad formally disclaimed any interest in the right of way after the trespass allegedly occurred. The implication of his argument is that the right of way property was all that was affected by the alleged trespass, although this is not clear from the evidence. Mr. Jordan described the property on which the trespass occurred as "over on my land."

The deed to the railroad recited that the grantors, "being desirous for the construction of said Railroad as well [sic] in consideration of the premises as of the sum of five dollars ... by these presents do grant, bargain, sell, alien, remise, release, convey and confirm" to said railroad "by full covenant of warranty for the purpose of constructing, maintaining and operating thereon" a railroad and "for all uses and purposes connected with the construction, repair, maintenance and complete operation of said Railroad the *Right of Way* for the same over and through the following tract ... [describing a forty acre tract]." The deed also stated that "said *Right of Way* ... through the lands ... above described to include and comprise land of the width of fifty feet on each side of said Railroad ... together with all the tenements, hereditaments, profits, rights, privileges and appurtenances thereunto appertaining to have and to hold the same unto the said Cairo and Fulton Railroad Company of Missouri, their successors and assigns forever for all lawful uses and purposes incident to a full and indefeasible title in fee simple...." [Emphasis ours.] Finally, the deed provided that if the railroad or its successors or assigns shall "cease permanently to so occupy and use said Railroad ... and the said tracks shall be abandoned ..." then said lands would revert.

■ In *Nigro v. Ashley,* 690 S.W.2d 410, 417 (Mo.App.W.D.1984), the court held that to convey fee simple title to a railroad, the land must be conveyed for valuable consideration and "no limitation on the quantum of the interest conveyed may appear in the deed by which title is transferred." The expression or limitation of the use to which the property is to be put is a decisive factor in construing whether a fee or an easement was conveyed. *Quinn v. St. Louis–San Francisco Ry. Co.,* 439 S.W.2d 533, 535 (Mo. banc 1969); *G.M. Morris Boat Co. v. Bishop,* 631 S.W.2d 84, 88 (Mo.App.S.D.1982).

■ *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 652 (1941), involved a deed which provided that the grantors "do hereby sell, convey ... the right of way for said Railroad [100] feet in width" and it further stated "[t]o have and to hold the same for all the uses and purposes of said railroad company so long as the same shall be used for the construction, use and occupation of said railroad...." The court held that the deed conveyed only an easement because of the use of the words "right of way" and also the provision limiting the use of the land to railroad purposes. *Id.* The court said "[t]he law is settled in this state that where a railroad acquires a *right of way* whether by condemnation, by voluntary grant or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement over the land and not the fee." *Id.*[4]

In *State ex rel. State Highway Comm'n v. Griffith,* 342 Mo. 229, 114 S.W.2d 976, 977 (1937), the deeds in question contained the words "[g]rant, bargain and sell, convey and confirm unto ... [a]s and for a right of way

---

4. *Brown* discussed the effect of § 5128, R.S.1939 (which was in effect at the time of the conveyance in question in the instant case, and is now § 388.210) which authorized railroads to take "voluntary grants of real estate" but provided that "the real estate received by voluntary grant shall be held and used for the purpose of such grant only." *Brown v. Weare,* 152 S.W.2d at 653. The term "voluntary grant" means a conveyance without valuable consideration. *Id.* If the conveyance was a voluntary grant, the effect of the statute was that the railroad acquired only an easement, no matter what interest the deed purported to convey. *G.M. Morris Boat Co. v. Bishop,* 631 S.W.2d at 87. The deed in the instant case, however, recited that the grantor was "desirous for the construction of said Railroad as well in consideration of the premises as of the sum of five dollars." Similar recitals have been held to constitute valuable consideration. *See Bayless v. Gonz,* 684 S.W.2d 512, 513 (Mo.App. E.D.1984). The statute, therefore, does not apply in the instant case.

for said railway," followed by the description. The deed also contained the following: "To have and to hold the premises aforesaid with all and singular, the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining unto the said party of the second part and unto its heirs and assigns forever." *Id.* The court noted that the deeds were general warranty deeds except for the language "as and for a right of way for said railway," and construed them as being for right of way purposes only, with the result that only an easement was conveyed. *Id.*, 114 S.W.2d at 978–82.

In *Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W.2d 666, 667 (Mo. 1969), the Missouri Supreme Court determined that a warranty deed to a railroad conveyed only an easement where, in describing the land conveyed, it said "[a] strip of ground or right of way," even though it also contained the words "Grant, Bargain and Sell, Convey and Confirm," and the grantor agreed that it and its successors "will Warrant and Defend." The court said that the deed "expressly limited the interest conveyed to a right of way." *Id.* at 668.

In *Quinn v. St. Louis–San Francisco Ry. Co.*, 439 S.W.2d at 535, the court held that a conveyance specifically limiting the use of the property to railroad purposes caused the deed to convey only an easement. The deed in that case also contained a reverter clause providing that "whenever the property herein conveyed" shall cease to be used for the purposes set out, the "land herein granted shall revert to and become the property of. . . ." *Id.* at 534. The court held that since the conveyance was for railroad purposes, the reverter clause "did nothing more than fix the period of nonuser which would cause the interest of the railroad in the property to terminate." *Id.* at 535. *See also State ex rel. State Highway Comm'n v. Jacob*, 260 S.W.2d 22, 24 (Mo.1953).

In contrast to the above cases is *Bayless v. Gonz*, 684 S.W.2d at 513, where the court, in holding that a deed conveyed land to a railroad in fee, specifically noted that the conveyance did not limit the use of the property conveyed, contained no reversionary clause, and did not mention the term "right-of-way."

In the instant case, we conclude that the deed in question conveyed an easement and not a fee. The subject of the conveyance was referred to twice as a *right of way*, the conveyance was clearly made for railroad purposes only, and there was to be a reversion upon abandonment. The use of other words consistent with a warranty deed or conveyance of fee simple does not change the fact that the interest conveyed was that of a right of way which results in the conveyance of an easement only. *See Brown v. Weare*, 152 S.W.2d at 652; *G.M. Morris Boat Co. v. Bishop*, 631 S.W.2d at 88.

When use of an easement for railroad purposes ceases, in the absence of contrary evidence, title to the fee is presumed to be in the abutting land owners to the center of the way. *Brown v. Weare*, 152 S.W.2d at 654–55; *G.M. Morris Boat Co. v. Bishop*, 631 S.W.2d at 88. Therefore, when a railroad ceases to use the property for railroad purposes, the original owners or their grantees hold the property free from the burden of the easement. 631 S.W.2d at 88.

The railroad, on July 22, 1991, executed a disclaimer of any right, title or interest in the property described in the 1857 deed.[5] Defendant contends, without citation of authority, that even if the railroad had only an easement, Plaintiffs had no right to complain of a trespass which occurred in August, 1989, because it was prior to the disclaimer.[6]

An easement can be abandoned without the necessity of a formal acknowledgement of that fact. In *Sanderson v. Less*, 296 S.W.2d 81, 84 (Mo.1956), the Missouri Supreme Court said that an easement may be extinguished by an intentional relinquishment thereof indicated by conduct respecting the use authorized. In *Hennick v. Kansas City S. Ry. Co.*, 364 Mo. 883, 269 S.W.2d 646, 650 (1954), the court said that an abandon-

---

5. Although the record is devoid of any proof of the fact, the parties raise no issue about whether the railroad (in this instance it was identified as the Missouri Pacific) was the appropriate and only party entitled to claim an interest in the right of way.

6. The record is not clear about whether the bulldozer hired by Defendant performed work only on the right of way (including the south half) or whether it extended onto portions of Plaintiffs' property which had not been burdened with the easement.

ment, which is a question of fact, is proven by evidence of an intention to abandon as well as of the act by which that intention is put into effect. "An intention to abandon is inferred by the discontinuance of rail service with no prospect for resumption of service." *Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc.*, 742 S.W.2d 182, 191 (Mo. App.W.D.1986), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988). As noted by Defendant, however, an abandonment must be proven by clear and convincing evidence. *Hennick v. Kansas City S. Ry. Co.*, 269 S.W.2d at 650.

In *Ball v. Gross*, 565 S.W.2d 685, 689 (Mo.App.E.D.1978), the court said that "an easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment." In *Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W.2d at 668, the Missouri Supreme Court held that an easement for a railroad right of way "is extinguished when the railroad ceases to run trains over the land," at which time "the use of the land is again in the original owner or his grantees, free of the burden of the easement." *See also Seventy–Ninth Street Improvement Corp. v. Ashley*, 509 S.W.2d 121, 123 (Mo.1974).

In the instant case, the rails, ties and rail bed (ballast) necessary for the operation of trains had been removed from the right of way prior to the acts complained of by Plaintiffs. These acts were obviously in further-ance of the railroad's intention to abandon the right of way. According to the 1857 deed, there was to be a reversion in the event of an abandonment of the tracks.

It is also appropriate to consider actions of Defendant which are inconsistent with his claim that the abandonment did not occur until the 1991 disclaimer. *See Seventy–Ninth Street Improvement Corp. v. Ashley*, 509 S.W.2d at 123. Defendant admitted causing the leveling and rearrangement of dirt on "the biggest part of all of" the right of way in 1989, action which was inconsistent with his present claim that it was not abandoned by the railroad until the formal disclaimer in 1991.

It should be noted that neither side requested findings of fact or conclusions of law, and none were made. Under these circumstances, we presume that all fact issues were found in accordance with the judgment, and we uphold the judgment under any reasonable theory presented and supported by the evidence. *Kueffer v. Brown*, 879 S.W.2d 658, 661 (Mo.App.E.D.1994). We may presume, therefore, that the trial court found that the 1857 deed conveyed an easement which was abandoned prior to the acts complained of in 1989. We are unable to conclude, based on the facts and circumstances as presented to us, that, pursuant to the applicable standard of review, the trial court erred in finding that Plaintiffs had a sufficient interest to pursue a trespass claim.[7]

**7.** At the oral argument of this case, Defendant cited *Missouri & Iowa Ry. Co. v. Norfolk & W. Ry. Co.*, 910 S.W.2d 261 (Mo.App.W.D.1995), for the proposition that the Interstate Commerce Commission has jurisdiction over abandonment of railroads. We assume this is directed at subject matter jurisdiction, although that contention was not referred to in Defendant's point relied on or in the argument section of his brief. Defendant did not argue that there could not have been an abandonment without action by the ICC. Rather, he still argued that the abandonment was not effective until the railroad filed the disclaimer in 1991. The *Missouri & Iowa Ry.* case was a condemnation action involving a right of way, part of which had previously been used by the defendant. While the court did say that the ICC has jurisdiction over the abandonment of railroads, it also said that "[q]uestions of title to and disposition of the property are matters subject to State law" and acknowledged that the issue of whether state action would obstruct the objec-tives for which Congress created ICC jurisdiction "does not require that ICC jurisdiction be terminated for every purpose before State jurisdiction may be exercised for any purpose." 910 S.W.2d at 264. In *Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc.*, 742 S.W.2d at 189–90, the court acknowledged that the same standards apply concerning abandonment in the ICC setting as under Missouri law and recognized a "distinction between abandonment of the right-of-way in fact for purposes of the property easement and abandonment of status as an ICC certificated carrier."

In the instant case, the railroad is not a party, and there is no issue about its authority to continue to operate on the right of way. Additionally, this is a trespass case between two adjoining owners, not a condemnation suit in which the railroad is being divested of anything. The only interest which the railroad had in the property was an easement subject to a reverter upon abandonment, which has occurred. Under these

Defendant also contends, in his first point, that if Plaintiffs did have a sufficient interest in the land to claim a trespass, there was no proof of damage or "intentional interference with [Plaintiffs'] property."[8] In support of his argument, Defendant cites only *Mawson v. Vess Beverage Co.*, 173 S.W.2d 606 (Mo. App.E.D.1943), claiming that it stands for the proposition that damages must be proven when trespass is based on negligence, but not if the trespasser acts intentionally. We do not interpret that to be the court's holding in *Mawson.* In fact, the court said that "[e]very unauthorized entry is a trespass, regardless of the degree of force used, even if no damage is done, or the injury is slight." *Id.* at 612. *See also Crook v. Sheehan Enterprises, Inc.*, 740 S.W.2d 333, 335 (Mo.App. E.D.1987). *Mawson* held that the damages recoverable for trespass are those which are immediate as opposed to consequential. 173 S.W.2d at 612. *See Wheeler v. Community Fed. Sav. & Loan*, 702 S.W.2d 83, 86 (Mo. App.E.D.1985) (interpreting *Mawson* in this manner).

If a point of error is one for which precedent is appropriate and available, it is appellant's obligation to cite relevant authority. *Inman v. Reorganized Sch. Dist. No. II*, 845 S.W.2d 688, 694 (Mo.App.S.D. 1993). If no relevant authority is available, the appellant should so state, with an explanation of why citations are unavailable. *Id.* When irrelevant authority is cited as supporting a point, it is tantamount to a point presented naked of citations, indicating there is no authority for appellant's assertion, and constitutes an abandonment of the point. *Cox v. Blackwell*, 661 S.W.2d 831, 832–33 (Mo.App.S.D.1983).

In this regard, we note that trespass is based on an intentional act, even though the actor may not intend to invade the property of another. *Looney v. Hindman*, 649 S.W.2d 207, 212 (Mo. banc 1983).

A party may be liable in trespass if he intends to do the act which results in the damage, although he did not intend to commit an act of trespass. *Cockrell v. Pleasant Valley Baptist Church*, 762 S.W.2d 879, 881 (Mo.App.E.D.1989). It is not necessary that damage result from an unauthorized entry because a trespass entitles the wronged party to nominal damages. *Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.*, 867 S.W.2d 618, 626 (Mo.App.E.D.1993). In the instant case there was proof of an unauthorized entry and, although not required, there was proof of damage.

There obviously was relevant authority available concerning this contention, although it was contrary to the position which Defendant urges upon this court. This part of the point is, therefore, considered abandoned, and the remainder of the point is denied.

In his second point relied on, Defendant attacks that part of the judgment by which the trial court found a nuisance from the flow of water onto Plaintiffs' property.[9] As with the first point, Defendant premises his attack, in part, on the contention that Plaintiffs did not have an ownership interest "in the subject tract." Assuming that this refers to the south half of the right of way (the half on Plaintiffs' side of the center line), we have already decided that contention adversely to Defendant's position. We note, however, that there was nothing in the judgment which could be construed as a finding that only that portion of the premises was affected.

Defendant also contends in his second point that the leveling and clearing of his own property was not unreasonable, and there was no evidence that his conduct interfered with Plaintiffs' use of their property. A nuisance is the "unreasonable, unusual, or unnatural use of one's property so that it

facts, the *Missouri & Iowa Ry.* case does not aid Defendant.

8. In support of his argument concerning this portion of the point, Defendant makes factual statements in his brief without page references to the record on appeal in violation of Rule 84.04(h). The record fails to reveal evidence which supports these statements. In another instance, Defendant argues that a repair estimate was to restore "the property to a condition it was *before* the removal of the ballast," with a citation to the transcript. The transcript reveals testimony that the contractor was asked to restore it back to the way it was "*after* he had taken the ballast out."

9. Like the first point, this point violates Rule 84.04(d), necessitating reliance on the argument section of the brief.

substantially impairs the right of another to peacefully enjoy his property." *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). "The focus is defendant's unreasonable interference with the use and enjoyment of plaintiff's land." *Id.* A neighboring landowner has a right to prevent unreasonable use that "substantially impairs the peaceful use and enjoyment" of his property. *Id.*

In the instant case, there was no evidence concerning the nature, frequency or degree of the alleged interference with the use and enjoyment of Plaintiffs' land caused by water. The evidence indicated that there was a culvert at some unspecified location under the railroad right of way which connected Plaintiffs' and Defendant's properties.[10] According to Mr. Jordan, the culvert was plugged and allowed no water through, while Defendant testified that it was open. Plaintiffs' theory was that the nuisance consisted of the flow of surface water from Defendant's property onto theirs after the leveling of the railroad right of way. The only evidence concerning the flow of water and its effects was the testimony of Plaintiff Jerry Jordan:

Q. After the ballast was removed, up to the time when you had any contact with Mr. Stallings, did you have any problems with water flowing from the north, Mr. Stallings' land, onto your land in the south?

A. Approximately a couple of years prior to the damage here we had a lot of water come on us at one time. And it—The—The railroad right of way there served as a dam to slowly let the water go through....

Q. Well, my question is: After the ballast was removed, was there any water flowing from Mr. Stallings' land over onto your land?

A. No.

....

Q: Did you have any problems with the water flow from Mr. Stallings' land to your land after August of '89?

A: Yes.

Q: What—Tell the Judge what problems you had with the water flow after August of '89.

A: I have some drainage from his property to mine.

Q: Okay. Now, your house sits on the west end of your property. Has it in any way flooded down to your house?

A: No.

Q: Has it flooded down on the east side of the property?

A: On the east side of my property?

Q: Of your property, yes.

A: (No audible response.)

Q: Is that the area that the water flow has gone onto?

A: East end? Yes.

Q: Okay. What do you use the other portion of your land for, beyond where you have your house sitting?

A: It is farm land.

Q: Okay. You—Do you rent that out to somebody?

A: Yes.

According to Mr. Jordan's own testimony, there had been at least one earlier occurrence when water flowed onto his property, presumably through the culvert.[11] The extent and effect of subsequent water flow after the work by the bulldozer is left to speculation. We hold that this was insufficient to establish that the use and enjoyment of Plaintiffs' property had been adversely affected by water from Defendant's property. Accordingly, the trial court erred in finding the existence of a nuisance.

Defendant's third point relied on is as follows:

The trial court erred in its application of the common enemy doctrine to this situation in that the Missouri Supreme Court, in *Heins Implement v. Highway and Transportation Commission*, 859 S.W.2d

---

**10.** The culvert was presumably installed to comply with § 389.660, RSMo 1994, which requires railroads to maintain suitable openings through the right of way to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of water has been obstructed or rendered necessary by the construction of the railroad.

**11.** There was no other testimony about the volume of water carried by the culvert or its course after entering Plaintiffs' property.

682 [sic] (Mo. banc 1993), replaced the common enemy doctrine with the reasonable use doctrine, and, under this doctrine, Mr. Stallings' conduct is unactionable in that leveling and dressing his own land without removal of dirt was a reasonable use.

This point fails to comply with the requirement of Rule 84.04(d) that a point relied on shall state what actions or rulings of the court are sought to be reviewed. *Thummel v. King*, 570 S.W.2d at 684–85.

The argument section of Defendant's brief, consisting of one and one-half pages, is of no assistance in determining the factual basis for the contention of error. Defendant arguably makes three assertions of fact in the argument section of his brief in support of his apparent premise that under *Heins* there was no liability. Two of them, in violation of Rule 84.04(h), fail to include a citation to any portion of the record on appeal. The third is not supported by the transcript reference contained in the brief. Defendant's statement of facts is of no additional assistance despite the requirement of Rule 84.04(c) that it shall be a "fair and concise statement of the facts relevant to the questions presented for determination...."

The point relied on which is under consideration here seems to be based on the premise that the dirt work on Defendant's side of the former right of way was a reasonable use of his property which would not result in liability under *Heins*. Considering the factual basis upon which the theories were pleaded by Plaintiffs and ruled by the trial court, this point appears to be directed toward the nuisance theory. We have already reversed the finding of a nuisance, however, in Point Two, and to that extent this point is moot. Even if Defendant's theory in this point were correct, that would not affect the validity of the trial court's finding of a trespass by the performance of dirt work on Plaintiffs' property, which we have affirmed.

Defendant's third point is denied.

In his fourth point relied on, Defendant contends that the trial court erred in permitting Plaintiffs to present the testimony of a surveyor after Defendant had rested his case. Although Defendant characterizes the testimony as being improper rebuttal, it was presented after the trial court sustained Plaintiffs' motion to re-open their case. The testimony consisted of the surveyor's identification of a survey conducted by him prior to the right of way being leveled by Defendant, and confirmation that he placed rods at the corners of Plaintiffs' property.

Defendant argues that the testimony "materially affected the merits of the case" because it was the only evidence concerning the location of the property line.[12] This contention is refuted by Defendant's statements in the argument portion of his brief, to wit:

[the surveyor's] testimony does not tend to prove or disprove whether the [Defendant] entered on or performed work on property owned by the [Plaintiffs] but merely purports to identify the location of survey stakes. He neither affirmed nor disaffirmed the position of [Plaintiffs] as to whether or not [Defendant] had crossed over onto [Plaintiffs'] property. As such, the Trial Judge's decision to admit the testimony materially affected the merits of the case.

Additionally, we note that Defendant admitted that he caused dirt work to be done on "the biggest part of all" of the right of way. This apparently would have included at least some of the right of way on Plaintiffs' side of the center line.

■ The decision to allow a party to re-open the evidence is within the sound discretion of the trial court and its decision will be reversed only upon a clear showing of abuse of that discretion. *Carrel v. Carrel*, 791 S.W.2d 831, 835 (Mo.App.W.D.1990). In the instant case, no abuse of discretion has been demonstrated. This point is denied.

■ In Defendant's final point, he contends that the trial court erred in setting the

---

**12.** We note that the testimony itself did not locate the property line. The survey presumably did, but the survey which was introduced through the surveyor's testimony has not been filed with this court. A copy of a survey is contained in the legal file as an attachment to answers to interrogatories. There is no indication whether this is a copy of the survey that was introduced in evidence.

amount of damages at $5000. He argues that there was evidence that repairs could be made to Plaintiffs' side of the right of way for $1000, and he concludes that, under the applicable measure of damages, the judgment should have been for no more than that amount.

■ The measure of damages to real property, where the property can be restored to its former condition, is the difference in its fair market value before and after the injury, or the cost of restoring it, whichever is less. *Kueffer v. Brown,* 879 S.W.2d at 666; *Farmer's Mut. Fire Ins. Co. v. Farmer,* 795 S.W.2d 104, 108 (Mo.App.S.D.1990).

At trial, Plaintiff Jerry Jordan testified that their property had a fair market value of $65,000 before the dirt work was performed by Defendant. In response to a question about its fair market value after the work, he said, "I think it's dropped the $5,000 to rebuild it." Plaintiffs had also obtained an estimate from Mr. Ferrell for the cost of restoring their part of the right of way which, according to Mr. Jordan, had been changed by Defendant. The only testimony concerning the amount of the estimate came, without objection, from Mr. Jordan. He testified that it was $4698 plus sales tax on the dirt.[13]

Defendant refers us to a copy of an estimate from the same contractor which is contained in the legal file as an attachment to answers to interrogatories. This estimate bears no indication that it is a copy of the exhibit about which the witnesses testified. Plaintiffs, however, do not dispute that this copy of the estimate is the same as the exhibit introduced at trial. We shall assume the same.

The estimate provided:

Necessary dirt moved to stop flow of surface water, from North to South, along the south half of the railroad right-of-way, located in the East part of Bertrand.

Our price for this job would be $1,000, and this would be specifically and only the land belonging to Jerry Jordan.

We propose to haul in topsoil for an area of 800′ × 12′ × 18″ deep, which would re-quire 533 cubic yards at $6.00 = $3,198.00, we would then grade and level at a price of $500.00.

The total price on this job would be $4,698.00, plus sales tax on dirt.

Defendant argues that

The written estimate given by Frank Ferrell encompassed two aspects of work. The first portion of the estimate was for equipment work to be done without the hauling of additional top soil totaling $1,000.

■ We are unable to conclude from the estimate itself that the work costing $1000 would restore the area to its condition prior to the bulldozer work performed at Defendant's request. To the contrary, there was evidence that the full estimate of $4698, plus sales tax, was to restore Plaintiffs' half of the right of way to the condition it was in prior to that work. Defendant's contention in this point that the judgment should have been for no more than $1000 is not supported by the record, especially considering the fact that we are to consider only evidence and inferences favorable to the judgment. *Kueffer v. Brown,* 879 S.W.2d at 661.

We note that the full estimate was to include sales tax on $3198. The record does not indicate what the appropriate sales tax rate was, and we are, therefore, unable to accurately calculate the full cost of repair as contemplated by the estimate. Mr. Jordan's testimony could be construed as an opinion that the difference between the before and after values as well as the cost of repair was $5000. Nevertheless, the difference, if any, between the estimate of the cost to repair the damage and the diminution in value caused by the trespass appears to be minimal. At least one court has considered whether the cost of restoring property to its pre-trespass state would be "significantly" less than the diminution in value in deciding to affirm the use of a jury instruction providing only for damages based on the latter test. *Crook v. Sheehan Enterprises, Inc.,* 740 S.W.2d at 336–37. Defendant does not argue that the judgment should have been any amount oth-

---

**13.** Defendant's statement in the argument section of his brief that "the lesser amount for restoration was testified to be" $1000 is neither supported by a citation to the record nor confirmed by our review of the transcript.

er than $1000. Accordingly, we deny Defendant's fifth point.

A number of violations of Rule 84.04 have been noted in this opinion. Many cases have reminded litigants that the requirements of Rule 84.04 are mandatory, and that violations of that rule can result in the abandonment of issues or even dismissal of the appeal. *See Thummel v. King,* 570 S.W.2d 679; *Hubbs v. Hubbs,* 870 S.W.2d 901, 908 (Mo.App.S.D. 1994); *White v. White,* 846 S.W.2d 212, 213–14 (Mo.App.S.D.1993); *Missouri Highway & Transp. Comm'n v. Taylor,* 839 S.W.2d 676, 679 (Mo.App.S.D.1992); *O'Dell v. State,* 835 S.W.2d 548, 550–51 (Mo.App.S.D.1992); *Emery v. Emery,* 833 S.W.2d 453, 455 (Mo.App. S.D.1992); *Cook v. Wadlington,* 821 S.W.2d 864, 865–66 (Mo.App.E.D.1991); *Paull v. Paull,* 819 S.W.2d 68, 72–73 (Mo.App.E.D. 1991). These citations are only a few of the many cases which have discussed the rule and its application. It is our desire to decide cases on the merits whenever possible. *See Thummel v. King,* 570 S.W.2d at 690. Our decision to do so in the instant case, in spite of the violations of Rule 84.04, should not be construed as an indication that we will do the same in the future.

We affirm the judgment except that portion finding a nuisance, which we reverse. Notwithstanding the fact that we reverse the finding of a nuisance, we do not reverse the amount of the judgment because it was supported by evidence of damage caused by the trespass.

MONTGOMERY, P.J., and FLANIGAN, J., concur.