Craig S. ADAMS, Appellant,

v.

Dick MOORE, et al., Respondent.

No. WD 47372.

Missouri Court of Appeals,
Western District.

Aug. 3, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Craig Adams, pro se.

Jeremiah W. Nixon, Atty. Gen., Bruce Farmer, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and BRECKENRIDGE and SPINDEN, JJ.

TURNAGE, Presiding Judge.

Craig Adams, an inmate at the Jefferson City Correctional Center which is managed and operated by the Missouri Department of Corrections (MDOC) in Jefferson City, brought this action for declaratory judgment and injunctive relief to prohibit Missouri prison officials from enforcing a grooming regulation that requires inmates to wear their hair above the collar. The trial court dismissed Adams' petition for failing to state facts that would entitle him to relief. On appeal, Adams contends that MDOC's grooming regulations violate Article I, § 5 of the Missouri Constitution because they impermissibly interfere with his right to practice his religion by requiring him to cut his hair. Affirmed.

Adams is part Choctaw Indian and follows the traditional Native American religious beliefs and practices which include the wearing of long hair. Prior to 1990, the MDOC regulation regarding hair length provided a religious exception for Native Americans from the hair length restrictions. Because the religious exception was eliminated in 1990, Adams is required to have his hair cut periodically in accordance with the regulations.

In his petition, Adams alleged that MDOC's grooming regulations for prisoners, which require that hair length be "no longer than the base of the rear of the shirt collar," violate his religious freedom rights as se-cured by Article I, § 5 of the Missouri Constitution. Adams requested a declaratory judgment that the grooming regulations are unconstitutional and further requested the court to enjoin prison officials from interfering with his religious beliefs. Adams also sought money damages against prison officials for cutting his hair in violation of his constitutional rights.

Missouri grooming regulations applied to Native Americans have been upheld by the federal courts as constitutional.

*Iron Eyes v. Henry,* 907 F.2d 810 (8th Cir.1990). In *Iron Eyes,* the Eighth Circuit upheld Missouri's grooming regulations and rejected a constitutional challenge by a Native American who claimed that prison hair length restrictions unreasonably impinged on his religious freedom rights. *Id.* The court in *Iron Eyes* held that Missouri's grooming regulation requiring all prisoners to wear their hair above the collar was a legitimate regulation designed to further security interests and did not violate the religious freedom rights of the Native American inmate. *Id.* at 813–14[2].

Although no Missouri cases have applied Article I, § 5 of the Missouri Constitution to determine the extent of a prisoner's religious freedom rights with regard to grooming regulations, a prisoner's right to exercise religious beliefs is currently judged under a "reasonableness test" by the federal courts. *Iron Eyes,* 907 F.2d at 813.

In *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." These penological objectives include rehabilitation, deterrence, and security. *Iron Eyes,* 907 F.2d at 813. The court in *Turner* noted that the following four factors are to be considered in determining the reasonableness of the regulation:

(1) [Whether there is] a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it . . .

(2) [W]hether there are alternative means of exercising the right that remain open to prison inmates ...

(3) [T]he impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally ...

(4) [Whether there is] an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89–91, 107 S.Ct. at 2261–63, 96 L.Ed.2d 64.

In *Iron Eyes*, the Court applied the *Turner* factors in determining the reasonableness of a Missouri grooming regulation. The prison officials in *Iron Eyes* advanced two objectives for the hair restrictions, both of which the Court found to be valid security concerns; first, to prevent prisoners from concealing contraband; and secondly, to alleviate confusion in prisoner identification. The Court found that there was a logical connection between the regulation and the objectives and further found that the regulation did not preclude the Native American inmate from exercising some other religious beliefs and practices. *Iron Eyes*, 907 F.2d at 814–15. The Court also found that prisoners with long hair would require more attention, including additional pat-down searches for contraband which would pose an increased risk to prison guards who had to be in close proximity with the prisoners while conducting the searches. *Id.* at 815. The Court further found that such an exemption could create friction and unrest in the prison facility because of the small number of Native American inmates at the prison and the special treatment they would be receiving if an exception were made. *Id.*

Finally, the Court held that any solution other than an exemption to the grooming regulation would be more than a de minimis cost but noted that the state had eliminated that exception. *Id.* at 815–16. In upholding the validity of the regulation, the Court emphasized that "this is an area where courts should defer to the 'informed discretion of corrections officials.'" *Id.* at 816 (citing *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262).

Notwithstanding that no evidence was presented to the trial court in this case, but based upon the allegations made by Adams in his petition, the same factors discussed in *Iron Eyes* are present here. Although Adams challenges the grooming regulations as violating the Missouri Constitution rather than the United States Constitution, this court finds the rationale in *Iron Eyes* to be reasonable and equally applicable here. As was determined in *Iron Eyes*, the connection between the grooming regulation and the security objectives of the Missouri prison officials are rationally related. Although Adams alleges that there are no alternative means available to him for exercising his other religious beliefs and practices, he fails to allege any facts to support this conclusion. Adams' allegations that the accommodation of his religious belief of abstaining from having his hair cut would have no impact on prison resources and could be fully accommodated at no significant cost are also conclusions without factual support.

In upholding the validity of Missouri's grooming regulations, the federal courts have found the prison hair length restrictions to be reasonably related to legitimate penological interests of the state prisons that do not violate religious freedom rights. *Iron Eyes*, 907 F.2d at 814. Likewise, this court concludes that for the same reasons discussed in *Iron Eyes*, Missouri's grooming regulations are also valid under the Missouri Constitution.

The trial court's dismissal of the action for declaratory judgment and injunctive relief is affirmed.

All concur.