Lloyd L. OSGOOD, d/b/a Hog Hair Pork Rind Baits, Plaintiff–Appellant–Respondent,

v.

WORM WORLD, INC., d/b/a Luck "E" Strike USA, Defendant–Respondent–Appellant.

Nos. 21193, 21219.

Missouri Court of Appeals, Southern District, Division One.

Jan. 28, 1998.

J. Michael Riehn, Cardin & Riehn, Cassville, for Plaintiff–Appellant–Respondent.

Donald E. Cupps, Ellis, Ellis & Cupps, Cassville, for Defendant–Respondent–Appellant.

PREWITT, Judge.

Following non-jury trial, both parties appeal from judgment entered determining the Plaintiff's petition and Defendant's counterclaim. The dispute centers around a contract entered into between Plaintiff and Defendant. It involved the purchase of fish baits manufactured and sold by Plaintiff to Defendant. The trial court found that Plaintiff was entitled to receive from Defendant $24,197.77 for profits lost when Defendant did not purchase baits that it was contractually obligated to purchase, and Plaintiff was also entitled to recover from Defendant $6,205.00 for spoiled raw materials as a result of the failure to purchase, for total damages of $30,402.77. On the counterclaim, the trial court found that Defendant was entitled to receive from Plaintiff $10,500.00, for advances it made to Plaintiff for which it had not received goods, and $5,000.00 for defective products Defendant received from Plaintiff.

Review is under Rule 73.01(c). For the interpretation of that rule, see *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo. App.1990). "Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01(c)(2). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(3). *Colbert v. Nichols,* 935 S.W.2d 730, 732 (Mo.App. 1996).

The transcript filed here contains 172 pages of evidence and other proceedings in the trial court. Plaintiff's brief has a three-page statement of facts making reference to only one page of the transcript. Rule 84.04 requires that a statement of facts in the brief shall have specific page references to the legal file or the transcript. A statement of facts not complying with Rule 84.04 pre-

serves nothing for review by an appellate court. *Pemiscot County Mem'l Hospital v. Mo. Labor & Indus. Rel. Comm'n,* 825 S.W.2d 61, 63 (Mo.App.1992); *see also Whalen v. College of the Ozarks, Inc.,* 851 S.W.2d 682, 683 (Mo.App.1993). Nevertheless, we have gratuitously hereafter reviewed the points contained in Plaintiff's brief.

### Plaintiff's Appeal

For Plaintiff's first point, he asserts that the trial court erred in computing his damages based on lost sales by using a profit margin of twenty-five percent "because the uncontradicted evidence was that plaintiff's profit margin on baits produced was 41%."

■ The trial court found that Plaintiff's testimony regarding his profit margin of forty-one percent was "somewhat speculative." Plaintiff argues that there was no evidence that the margin was anything other than forty-one percent. Although this testimony may not have been countered, it was not admitted. The trial judge, as the trier of fact, can disbelieve testimony, even when uncontradicted. *Stolba v. Vesci,* 909 S.W.2d 706, 709 n. 3 (Mo.App.1995). He did so here. Deferring to the trial court on credibility, this point has no merit. Point I is denied.

For his second point, Plaintiff asserts that there was no substantial evidence to support granting Defendant $5,000.00 on its counterclaim for defective products, and that this determination was against the weight of the evidence. In argument following the point, Defendant acknowledges that there was evidence from John Hendricks, president of Worm World, Inc., that Worm World, Inc. had received approximately $50,000.00 worth of defective products. Plaintiff then contends that the "only credible testimony" was from a principal, Don Angel, in a company which later bought Defendant's assets. Plaintiff contends that Mr. Angel was the only witness who did not have a direct financial interest in the outcome. He testified to a minimal amount of product which was growing moldy.

■ As earlier said, this Court gives due deference to the trial court's ability to judge the credibility of witnesses, and having done so, we conclude there was substantial evidence to support the $5,000.00 award. We set aside a judgment on the ground that it is against the weight of the evidence only when this Court has a firm belief that the judgment is wrong. *Goodnight v. Curry,* 618 S.W.2d 278, 279 (Mo.App.1981). "Weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. *Id.* The weight of the evidence is not determined by mathematics, but upon its effect in inducing belief. *Id.* So viewed, we do not have a firm belief that this award was erroneous. Point II is denied.

For his third point, Plaintiff again contends that the trial court erred in regard to the $5,000.00 award for defective goods, "because the defendant failed to give notice as required of defective performance under the Uniform Commercial Code." Section 400.2-607(3)(a), RSMo 1994, requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

■ There was evidence that defects in the product were discussed between Plaintiff and a representative of Defendant, apparently by telephone, and that Plaintiff went to Defendant's facilities and inspected the product, and they further discussed the claimed deficiencies. The notice mandated by the Uniform Commercial Code "does not require any particular formality or detail as to the nature of the buyer's complaint." *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 369 (Mo.banc 1993). The purpose of notice is "to provide the seller with an opportunity to correct any defects, prepare for litigation, and prevent stale claims." *Id.* Therefore, in this case, notice was sufficient. Point III is denied.

For his fourth point, Plaintiff contends that the $5,000.00 award granted on the counterclaim for defective goods was erroneous "because Defendant failed to prove the measure of damages for defective performance under the Uniform Commercial Code." Here, the trial court could find that the defective goods were worthless, damaging Defendant in the amount paid. The evi-

dence was sufficient to support the award as to damages. Point IV is denied.

For his remaining point, Plaintiff contends that the trial court erred in granting Defendant judgment on its counterclaim for $10,-500.00, for advances, because there was no substantial evidence to support it. In the argument following that point, Plaintiff acknowledges that John Hendricks testified that $10,000.00 was owed for advances. Defendant acknowledges that this award should be limited to $10,000.00, and this Court will order the judgment amended to reflect that change.

*Defendant's Appeal*

In its appeal, Defendant presents two points relied. For its first point, Defendant asserts that the trial court erred "in ruling that the defendant was required to purchase 100,000 units of 'classic frogs and salty frogs', 40,000 units of 'hairy pork craws' and 10,000 units of other pork rind baits and rewrote the contract in violation of rules of contract construction and interpretation."

█ Attached to Plaintiff's petition and admitted in Defendant's answer was a "Sales Distribution Agreement," and two documents entitled "purchase order." The Sales Distribution Agreement requires Defendant to purchase from Plaintiff 150,000 units of Plaintiff's product in the first year of the agreement. The parties agree that this document was signed on either the 11th or 12th of May, 1992. The two purchase orders were signed at the same time. In one, Defendant ordered from Plaintiff 100,000 units of "classic frogs and salty frogs," at $1.05 each. In the other purchase order, Defendant ordered from Plaintiff 40,000 units of "hairy pork craws," at $.90 each.[1]

At trial, there was admitted into evidence copies of the Sales Distribution Agreement and the purchase orders. Also entered into evidence was a "Contract for Sale of Goods," signed at the same time as the other three documents. The Contract for Sale of Goods required Plaintiff to sell and Defendant to buy "hairy pork crawdads" at $.90 each. No specific quantity is set forth, other than the Plaintiff agreed to sell and deliver and Defendant agreed to purchase all of Defendant's "requirements of hairy pork crawdads; however not to exceed 10,000 bottles of product per month." If Defendant wished to purchase more than 10,000 bottles per month, it was to give Plaintiff 60–days' notice.

As the Sales Distribution Agreement clearly required Defendant to purchase 150,000 units from Plaintiff, the trial court was certainly justified in that finding. The parties seem to agree that neither party considered the purchase orders to be an actual order. The trial court apparently calculated damages on the unmentioned 10,000 units at $.90 per unit, the lowest price contained in the documents.

The alleged rewriting of the contract is not specifically set forth in the point but mentioned in the argument, wherein Defendant says the trial court erroneously required Defendant to make monthly purchase orders. That conclusion is immaterial, as damages were determined on an annual, rather than monthly, basis. They were calculated in accordance with Plaintiff's evidence, except for the profit margin claimed by Plaintiff. We conclude that under the exhibits and oral testimony the trial court was justified in its finding and that this contention has no merit.

For its remaining point, Defendant asserts that the trial court erred in only awarding it $15,500 on its counterclaim, as there was no substantial evidence to support it and it was against the weight of the evidence. Defendant cites no authority, either under its points relied on or in the argument portion of its brief. This is in violation of Rule 84.04(d).

█ If a point of error is one for which precedent is appropriate and available, it is appellant's obligation to cite relevant authority and if no relevant authority is available, appellant should so state with an explanation of why citations are unavailable. *Jordan v. Stallings,* 911 S.W.2d 653, 660 (Mo.App.

---

1. Delivery on the "classic frogs and salty frogs" was to commence on April 15, 1992, and delivery on the "hairy pork craws" was to commence by May 1, 1992. Both dates, of course, were previous to the dates of the Sales Distribution Agreement and the purchase orders. The parties make no issue of this.

1995). Failing to cite relevant authority or to explain why citations are unavailable constitutes an abandonment of the point. *Id.* Defendant's second point is thus abandoned. We do gratuitously note that, deferring to the trial court on credibility, there was substantial evidence to support the award and it was not against the weight of the evidence.

The judgment is modified by reducing Defendant's total damage award on its counterclaim to $15,000.00, and in all other respects the judgment is affirmed. The matter is remanded to the trial court for it to amend its judgment accordingly.

GARRISON, P.J., and CROW, J., concur.