**WESTERN EXTRALITE CO., Appellant,**

v.

**SAFECO INSURANCE CO., et al., Respondents.**

**No. WD 70260.**

Missouri Court of Appeals, Western District.

Dec. 1, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 2010.

Stephen O. Griffin, for Appellant.

Joel D. Brett, for Respondents.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

Western Extralite Company appeals from a judgment entered in the Circuit Court of Boone County in favor of Freise Construction Company in an action on account filed by Western Extralite. For the following reasons, the trial court's judgment is reversed.

Freise was the general contractor on the Hatch Hall Residence Project at the University of Missouri at Columbia. Freise subcontracted the electrical work on that project to Ruzicka Electric, which ordered supplies, on account, from Western Extralite, a distributor of electrical products. In April 2007, Western Extralite delivered to Ruzicka an order of light fixtures along with lighting and electrical outlets and receptacles that had been manufactured by Celex. Western Extralite subsequently received payment of $360,850.00 for that shipment.

In June 2007, Freise terminated Ruzicka from the project for failing to comply with the terms of the subcontracting agree-

ment. Later that month, Freise entered into an account agreement directly with Western Extralite allowing it to order any further electrical equipment on account directly from Western Extralite.

In early August 2007, after the light fixtures delivered to Ruzicka in April 2007 were installed and wired, Freise discovered that the ballast transformers on the majority of the light fixtures were either defective or missing. Freise notified Western Extralite after discovering this problem. Western Extralite, in turn, notified Adam Ward of Ward & Jacobs, the manufacturer's representative for Celex, of the problem with the ballast transformers. Subsequently, because Ruzicka had not ordered a sufficient number of light fixtures for the residence hall project, Freise ordered an additional $16,285.00 worth of light fixtures from Western Extralite.

Ward contacted Freise, visited the worksite on August 20, and confirmed that the ballasts were defective or missing. Ward agreed to ship 160 replacement ballasts to Freise. Andy Walden, the project manager for Freise, told Ward that, because of time constraints on the project, it would be necessary for the new electrical subcontractor to start swapping out ballasts immediately and to purchase necessary replacement ballasts locally until the shipment arrived. Freise did not convey that information to Western Extralite. Had Western Extralite been informed that Ward could not get the replacement ballasts to Freise in a timely manner, it could have timely provided conforming ballasts from another supplier.

On August 22, the additional light fixtures ordered by Freise were delivered. It was later determined that some of the ballasts on the fixtures in that shipment were also defective or missing. Freise did not notify Western Extralite of the problems with this most recent shipment. Re-placement of the ballasts on all of the fixtures was completed by September 13 when the shipment of replacement ballasts from the manufacturer for the April shipment arrived and was rejected by Freise.

After receiving the final invoice from Western Extralite for $16,284.00, in October 2007, Freise paid $6,507.70 of that bill. Along with that payment, Freise included a letter stating that it was "back charging" Western Extralite $9,776.10 for the cost of purchasing and installing new ballasts in the fixtures from both the April shipment to Ruzicka and the August shipment to Freise.

On February 13, 2008, Western Extralite filed a petition in the Circuit Court of Boone County seeking to recover the $9,776.10 remaining due on the invoice for the August shipment. The petition asserted an action on account for the one and only August shipment of light fixtures ordered by Freise from Western Extralite. Both the petition and Freise's answer relate solely to that August shipment from Western Extralite to Freise, and neither even mentions the fixtures that Ruzicka bought from Western Extralite in April. The case was tried to the court on August 29, 2008, and the court subsequently entered judgment in favor of Freise.

In its sole point on appeal, Western Extralite claims that the trial court erroneously applied the law in entering judgment in favor of Freise in its action on account because Freise had admitted entering into an account agreement with Western Extralite, admitted that Western Extralite had complied with the terms of that agreement, and admitted breaching the terms of the account agreement. Western Extralite further contends that Freise failed to establish a valid defense to its claim.

As in any court-tried civil case, our review is governed by the standard of review established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Furne v. Dir. of Revenue*, 238 S.W.3d 177, 180 (Mo.App. W.D.2007). "Accordingly, the trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law." *Id.* at 179 (internal quotation omitted). "This standard requires us to accept the trial court's credibility determinations and view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences." *Capital Bank v. Barnes*, 277 S.W.3d 781, 782 (Mo.App. S.D.2009). "We defer to the factual findings of the trial court, which is in a superior position to assess credibility. However, this Court independently evaluates the trial court's conclusions of law." *G.H.H. Invs., L.L.C. v. Chesterfield Mgmt. Assocs., L.P.*, 262 S.W.3d 687, 691 (Mo. App. E.D.2008) (internal citation omitted).

■ Neither party requested that the trial court make findings of fact and conclusions of law under Rule 73.01(a), and the trial court did not enter any of its own accord. "In a court-tried case, where there are no findings of fact or conclusions of law, all issues are deemed found in accordance with the result reached and the judgment affirmed if it could be rendered on any reasonable theory." *Gifford v. Geosling*, 951 S.W.2d 641, 643–44 (Mo.App. W.D.1997).

■ "An action on account is an action at law, based in contract." *Berlin v. Pickett*, 221 S.W.3d 406, 410 (Mo.App. W.D. 2006). "To make a submissible case, the plaintiff must prove that (1) defendant requested plaintiff to furnish merchandise or services, (2) plaintiff accepted defendant's offer by furnishing such merchandise or services, and (3) the charges were reason-able." *Dyna Flex Ltd. v. Charleville*, 890 S.W.2d 413, 414 (Mo.App. E.D.1995).

■ While admitting that it ordered the light fixtures, that Western Extralite had furnished them, and that they were charged the agreed upon amount, Freise claims that it effectively rejected a portion of the ballasts contained in the light fixtures from the shipment to Ruzicka in April and to itself in August. Freise asserts that it properly deducted its costs of replacing those ballasts from the amount it owed to Western Extralite for the August shipment.

We initially note that Freise lacked any authority to reject only the ballasts under the provisions of the UCC. As conceded by both parties, this transaction involved the sale of goods and is, therefore, governed by Article 2 of the Uniform Commercial Code, Sections 400.2–100 through 400.2–725. *Ewanchuk v. Mitchell*, 154 S.W.3d 476, 480 (Mo.App. S.D.2005). Pursuant to § 400.2–601, unless otherwise agreed by way of a contractual limitation of remedy, "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest."

Section 400.2–105(6) provides that a commercial unit is "such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use." "A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole." § 400.2–105(6).

The smallest commercial unit at issue in this case was each individual light fixture, not each piece that was used in the assem-

bly of that light fixture. Certainly the record reflects, and common sense dictates, that the removal of the ballast from the light fixture would impair its value and its use. The UCC does not allow for the rejection of an individual part of a commercial unit while accepting the rest. Indeed, "[a]cceptance of a part of any commercial unit is acceptance of that entire unit." § 400.2–606(2). By retaining the light fixtures and merely replacing a part in some of those fixtures, Freise clearly accepted the fixtures. Moreover, Freise offers no argument regarding what authority it had to reject the fixtures contained in the April shipment ordered by and delivered to Ruzicka.

■ The fact that Freise did not reject the fixtures does not mean other remedies were not available to it. While acceptance obligates the buyer to pay the contract price for the goods, it does not impair any other remedy provided to the buyer under the law for nonconformity. *Far East Servs. Corp. v. Tracker Marine L.L.C.*, 246 S.W.3d 486, 506 (Mo.App. S.D.2007) (citing *Section 400.2–607(1) & (2)* ). Section 400.2–714 provides that "[w]here the buyer has accepted goods and given notification (subsection (3) of section 400.2–607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." The burden of proving any breach by nonconformity, however, rests with the buyer. *Far East Servs. Corp.*, 246 S.W.3d at 506.

■ The manner of "self-help" utilized by Freise in refusing to pay the majority of the amount due for the August shipment was clearly improper with regard to any problems with the light fix-

tures contained in the April shipment to Ruzicka. Under § 400.2–717, "[t]he buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due *under the same contract.*" (Emphasis added.) The April shipment was made under a contract between Western Extralite and Ruzicka. The August shipment was made under a contract between Western Extralite and Freise. Accordingly, each shipment was the subject of a different contract. Thus, even assuming that Freise had standing to pursue damages related to the light fixtures shipped by Western Extralite to Ruzicka, Freise had no authority under the UCC to deduct damages related to that shipment from the amount due for the August shipment. In addition, since no counterclaim related to the April shipment was included in Freise's answer to the petition and, in fact, neither the petition nor the answer made mention of the April shipment by way of pleading or an affirmative defense,[1] any such damages should not have been considered in this case. The fact that such evidence was irrelevant to the petition before the trial court was repeatedly raised by Western Extralite at trial.

■ We next consider whether Freise properly deducted any damages related to the August shipment from its payment. The president for Freise Construction testified that she did not know whether any of the light fixtures from the August shipment had defective ballasts. While the project manager testified that some of the ballasts in the August shipment were defective or missing, he did not know how many of them had problems. Thus, the record is, at best, unclear as to what portion of the deductions made by Freise

---

1. "Recoupment is a defense in confession and avoidance and must be pled." *Dyna Flex Ltd.* *v. Charleville*, 890 S.W.2d 413, 414 (Mo.App. E.D.1995).

Construction related to the August shipment.

■ Regardless, the undisputed evidence reflects that the first notice provided to Western Extralite indicating that there were problems with the August shipment was the October 2007 letter from Freise stating that it was deducting $9,776.10 from the amount owed on the invoice for replacement of ballasts from both the April shipment to Ruzicka and August shipment to Freise. Under § 400.2–607(3)(a), "[w]here a tender has been accepted ... the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." One principal reason for this notice requirement is "to provide the seller with an opportunity to correct any defects." *Osgood v. Worm World, Inc.,* 959 S.W.2d 139, 141 (Mo.App. S.D.1998) (internal quotation omitted).

Section 400.1–204 provides that as long as it is not manifestly unreasonable, the time for notice may be fixed by agreement. That section further provides that "[w]hat is reasonable time for taking any action depends on the nature, purpose and circumstances of such action." § 400.1–204.

Freise was aware of problems with the August shipment by the end of August. The invoice for that shipment provided that written notice of any defect or problem with the goods was to be provided to Western Extralite within five days of delivery. Regardless of whether that provision was binding on Freise, Freise's notice in October, after the entire residence hall project was completed and long after the problems were discovered, was clearly not provided within a reasonable time and offered Western Extralite no opportunity to remedy any problems with the shipment.[2] Because Freise failed to provide notice of the defective ballasts in the August shipment to Western Extralite within a reasonable time, any claim of damages related thereto is barred. Having reached this conclusion, we need not consider the parties' additional arguments related to the validity of the express warranty disclaimer on the invoices and in the account agreements.

In short, even accepting all of the evidence presented by Freise as true and viewing all reasonable inferences drawn therefrom favorably to it, the record does not contain evidence sufficient to support a judgment in its favor. All of the facts necessary to establish an action on account related to the August shipment were conceded, and no defense to that action was established by Freise. Western Extralite was entitled to judgment as a matter of law.

The judgment of the trial court is reversed, and the cause is remanded for consideration of Western Extralite's claim for interest and attorney's fees.

All concur.

---

2. Western Extralite's salesman testified that had notice been provided that there was a problem with the August shipment and that the manufacturer was not going to be able to provide the ballasts quickly enough to Freise, Western Extralite could have timely supplied comparable ballasts at a much lower price than Freise's local supplier from another manufacturer.